UNITED STATES of America,
Plaintiff-Appellee,

v.

David Calvin LENTZ,
Defendant-Appellant.

No. 74–3833.

United States Court of Appeals,
Fifth Circuit.

Dec. 4, 1975.

Rehearing and Rehearing En Banc
Denied Jan. 14, 1976.

Harvey A. Monroe, Jonesboro, Ga. (Court-appointed. Not Under Act), Paul McGee, Atlanta, Ga., for defendant-appellant.

John W. Stokes, U. S. Atty., Dorothy T. Beasley, Asst. U. S. Atty., Atlanta, Ga., for plaintiff-appellee.

Before BELL, THORNBERRY and MORGAN, Circuit Judges.

BELL, Circuit Judge:

This is an appeal from a conviction on each of six counts in an indictment charging violations of 18 U.S.C.A. § 1014,[1] making false statements on mobile home loan applications for the purpose of influencing Federal Savings and Loan Associations whose accounts were insured by the Federal Savings and Loan Insurance Corporation.

We find no error in the claim that the district court unduly participated in the trial, or that there was a breakdown in the judicial function due to the large amount of documentary evidence and the difficulty encountered by the government in introducing that evidence.

It is urged also that the evidence was insufficient to warrant the convictions, and that the court erred in charging the jury that it was not necessary for the government to show that the statements were presented directly to the savings and loan associations. These assignments of error present questions of substance but, after careful review of the evidence and the appertaining law, we affirm.

Four of the counts involve the Peachtree Federal Savings and Loan Association (Peachtree Federal), and two involve the Newnan Federal Savings and Loan Association (Newnan Federal).

The proof demonstrates that each count involves a fictitious sales contract and note, fabricated by defendant, a dealer in mobile homes. These loan packages were discounted through a loan servicing company, American Mobile Mortgage Company (AMMCO), to the two savings and loan associations. Defendant had entered into a dealer agreement with AMMCO. This dealer agreement was executed by defendant in blank but in three instances it refers to AMMCO discounting the mobile home loan to "Bank," with "Bank" being used as a generic term.

It developed that the names of Peachtree Federal and Newnan Federal were added to the dealer agreement by AMMCO at a later time, and there was no proof that defendant ever received a copy with the names added. Indeed, there is no direct proof that he knew that the paper was to be discounted to those particular institutions or to any particular institution covered by § 1014. The assignments by defendant of the loans underlying the six counts in the indictment were executed in blank, with the names of Peachtree or Newnan Federal being inserted subsequently by AMMCO.

We will consider first the alleged error in the charge. The resolution of this question goes also to the standard of proof required on the part of the government.

Section 1014 provides that a defendant must "knowingly" make a false statement or report "for the purpose of influencing in any way the action" of a covered institution. The trial court charged the jury that ". . . it is not necessary to show that the statement or statements were presented directly to such

1. 18 U.S.C.A. § 1014 provides in pertinent part:

> Whoever knowingly makes any false statement or report, . . . for the purpose of influencing in any way the action of . . a Federal Savings and Loan Association, . . . any institution the accounts of which are insured by the Federal Savings and Loan Insurance Corporation, . . .

upon any application, advance, discount, purchase, purchase agreement, repurchase agreement, commitment, or loan, or any change or extension of any of the same, by renewal, deferment of action or otherwise, or the acceptance, release, or substitution of security therefor, shall be fined not more than $5,000 or imprisoned not more than two years, or both.

institutions." Defendant urges that § 1014 requires a direct presentation of false statements to a specific covered institution, a situation which, as stated, did not occur due to the presence and function of the loan service agent, AMMCO. As we perceive his position, he argues that proof of direct presentation is necessary as well as proof that he had knowledge that the particular institution was covered by the statute.

■ We consider this question in the frame of reference that one policy behind § 1014 is to protect specific financial institutions from fraudulent loan applications. Given this, the acceptance of defendant's theory would emasculate the purpose of the statute. The statutory purpose could be avoided simply by insulating the presentation of false statements by the use of a third party conduit.

■ The *mens rea* required in the statute is that proof be adduced that defendant acted "with knowledge," *United States v. Mekjian*, 5 Cir., 1975, 505 F.2d 1320, that the statement was false and was made for the purpose of influencing the action of a covered institution. *See United States v. Trexler*, 5 Cir., 1973, 474 F.2d 369.

■ In our view, it is sufficient to establish that the false statement was made for the purpose of influencing the action of a covered institution, if the proof shows that the defendant received notice sufficient to create a reasonable expectation that the statement would reach an institution of the type included in the statute. The proof need not show that it was presented directly to a covered institution. As will be seen, the proof was sufficient in this regard and we find

no error in the charge. It was adjusted to the evidence and not contrary to law.[2]

Our view is supported by *United States v. Sabatino*, 2 Cir., 1973, 485 F.2d 540, which holds the government to proof that the defendant must at least have known that the statement was made to "a bank" as distinguished from "a bank insured by the F.D.I.C." We construe the rationale of that decision as reaching a defendant's knowledge of the statement's presentation to banks generally as distinguished from a particular bank. The court said:

> To have "the purpose of influencing" such a bank, the defendant must have known that it was a bank that he intended to influence. We do not determine that he must know that the bank is insured by the F.D.I.C., but, at least, he must know that it is "a bank" to which he has made the false statement in his application for a loan.

485 F.2d at 544. *See United States v. Lee, supra; United States v. Barbato*, 1 Cir., 1973, 471 F.2d 918.

■ Given the above legal standard, we now turn to the evidence. In determining the sufficiency of the evidence it must be examined, of course, in the light most favorable to the government. *Glasser v. United States*, 1942, 315 U.S. 60, 62 S.Ct. 457, 86 L.Ed. 680; *United States v. Warner*, 5 Cir., 1971, 441 F.2d 821. Our responsibility in a case based upon circumstantial evidence is to determine whether the jury could conclude that the evidence presented at trial is inconsistent with the hypothesis of the accused's innocence. *United States v. Black*, 5 Cir., 1974, 497 F.2d 1039, 1041; *United States v. Amato*, 5 Cir., 1974, 495 F.2d 545.

■ Although there was no direct evidence that the defendant knew that the

---

2. Although we find no authority precisely in point, we do note that direct presentation by a defendant is not required under other similar federal statutes. *United States v. Bass*, 8 Cir., 1973, 472 F.2d 207 (Federal False Statements Statute, 18 U.S.C.A. § 1001); *United States v. Pisciotta*, 10 Cir., 1972, 469 F.2d 329 (Mail Fraud Statute, 18 U.S.C.A. § 1341); *United States v. Lee*, 5 Cir., 1970, 422 F.2d 1049 (Department of Housing and Urban Development and Federal Housing Administration Transactions, 18 U.S.C.A. § 1010).

loans were to be discounted to Newnan Federal or Peachtree Federal before or at the time the loans in question were discounted, there was sufficient circumstantial evidence to make a jury issue and to warrant the convictions. First, the dealer agreement signed by the defendant contained three references to the fact that loan packages submitted to AMMCO by the defendant would in turn, be submitted to "bank" for purchase. Second, the evidence showed that a loan payment book was sent to Douglas J. Landrum, whose name appeared on the loan application dated November 27, 1972. This was a wholly fictitious loan, fabricated by defendant and forming the basis of one of the counts in the indictment. Landrum received the payment book sometime in the period between November 27, 1972 and "around February or March" of 1973 when he moved. He testified that he turned the payment book over to defendant's employee at the time. Newnan Federal received checks in payment on the Landrum account, the first dated February 22, 1973, signed by the defendant and drawn on the account of the defendant's company. Third, the Willis transaction, the basis for the charge in count three of the indictment, occurred on April 3, 1973, a date subsequent to defendant's two payments on the Landrum account. Taken together these facts are such as to support a fair inference that the defendant knew his loan packages were being submitted to a bank or banks.

Finally, a review of the record indicates that payments were made on the various loan accounts to prevent default and the uncovering of the fraudulent scheme. Although, as indicated, the Landrum payments were the only ones directly attributable to the defendant, the maintenance of the other five accounts (the other counts), their lack of substance, and their fabrication by defendant, would be sufficient to support an inference by the jury that the defendant knew the loans were to be placed with the particular financial institutions.

The proof was sufficient to warrant the convictions.

Affirmed.