UNITED STATES of America, Plaintiff-Appellee,

v.

Gerald Glenn GAMMAGE, Defendant-Appellant.

No. 85–1612 Summary Calendar.

United States Court of Appeals, Fifth Circuit.

May 23, 1986.

---

**15.** *Cf. United States v. Fortna,* 769 F.2d 243, 249 (5th Cir.1985).

**16.** S.Rep., *supra,* at 22, U.S.Code Cong. & Admin.News 1984, p. 3205.

Melvyn Carson Bruder, Dallas, Tex., for defendant-appellant.

Marvin Collins, U.S. Atty., William F. Alexander, Asst. U.S. Atty., Dallas, Tex., for plaintiff-appellee.

Before RUBIN, REAVLEY, and HILL, Circuit Judges.

ROBERT MADDEN HILL, Circuit Judge:

In his role as co-guarantor of two loans, Gerald Glenn Gammage claimed as an asset an interest in his wife's separate property. He was convicted of making materially false statements to two federally insured institutions. We conclude that the district court properly instructed the jury concerning the essential elements of the offenses and Gammage's defense of good faith mistake. We also conclude that the evidence of Gammage's *mens rea* was sufficient to uphold the convictions. We therefore affirm.

## I.

Until his death in June 1975, James A. Lindsay owned two stock certificates which reflected his complete ownership of Gulf States Title Company [Gulf States], a Louisiana corporation. Under the terms of Lindsay's will, as ultimately adjudicated by a Louisiana probate court in May 1983, all of his property, including his stock in Gulf States, passed in undivided equal portions to his three children, one of whom was April Lindsay Gammage. The stock certificates were not cancelled and reissued, but were held jointly by the three children. April had married Gammage in July 1977, and they remained married until their divorce in May 1985.

In the course of his real estate and business dealings, Gammage acted as co-guarantor for corporate borrowers on the two occasions relevant here. In connection with a loan guaranty for $736,381.80 dated March 28, 1983, Gammage signed a loan application and financial statement which listed as an asset a $900,000 interest in Gulf States stock. These documents were received by the lender, First Savings and Loan Association of Burkburnett, Texas, an institution insured by the Federal Savings and Loan Insurance Corporation [FSLIC]. In connection with another loan guaranty for $1,203,265 dated October 4, 1983, Gammage signed a loan application and financial statement and submitted it to the lender, Lancaster First Federal Savings and Loan Association of Lancaster, Texas, also a FSLIC insured institution. This financial statement listed as an asset Gulf States stock, which it valued at $950,000.

The financial statement submitted to the Burkburnett savings and loan claimed that the Gulf States stock was "registered in the name of M/M G. Gammage." The financial statement submitted to the Lancaster savings and loan did not mention the registration of the stock, listing it once simply as "Gulf States Title, Inc., private" and at another point "Gulf States Title Family Held." Gammage's wife April did not sign any of these financial statements or supporting documents. When these loans were later closed, Gammage received several thousand dollars from the corporate borrower. In an indictment filed on March 27, 1985, Gammage was charged with two counts of making materially false statements in loan applications to federally insured lending institutions, each in violation of 18 U.S.C. § 1014.

At trial, the government introduced the documents signed by Gammage and submitted to the Burkburnett and Lancaster savings and loans which stated his claim of ownership of the Gulf States stock. James A. Lindsay II, April's brother, testified that April owned an undivided one-third interest in their father's Gulf States stock as a result of the judgment of the Louisiana probate court, but that no stock was ever issued to Gammage. This probate judgment was also introduced in evidence. Gammage testified that he "had been quoted by an attorney and friend" that under Texas law "all assets to the two parties of a marriage during the marriage are considered to be community unless otherwise proven ... in court...." Gammage claimed that when submitting the loan document he believed that April and he "had a community interest" in the Gulf States stock. Three character witnesses also testified for Gammage.

At the charge conference, counsel for Gammage objected to the omission of his proposed jury instruction which stated that all property owned by either spouse during the marriage is presumed to be community property. The district court rejected this instruction, but agreed to a minor rewording of another instruction. No other objections to the instructions were raised. The district court then charged the jury, including instructions on the elements of the offenses and on a good faith defense. The jury found Gammage guilty on both counts. The district court entered judgment on this verdict, imposing a sentence of two concurrent two-year terms of imprisonment and a $5000 fine, but suspending all except 179 days of the two-year period. After Gammage served three months, the district court ordered him released from custody, reducing the 179 days to time served. Gammage appeals.

## II.

■ Gammage first argues that the district court failed to instruct the jury with respect to the identity of the entities to whom the statements of his ownership of Gulf States stock were made. Gammage testified that, with respect to the Burkburnett loan, he did not submit the supporting documents directly to the savings and loan. One element of a violation of 18 U.S.C. § 1014 is that the statement be made "for the purpose of influencing in any way the action" of a covered entity; a FSLIC insured institution is one such covered entity.[1] *See U.S. v. Lentz,* 524 F.2d 69, 70–71 (5th Cir.1975). "[I]t is sufficient to establish that the false statement was made for the purpose of influencing the action of a covered institution, if the proof shows that the defendant received notice sufficient to create a reasonable expectation that the statement would reach an institution of the type included in the statute. The proof

---

1. Whoever knowingly makes any false statement or report, or willfully overvalues any land, property or security, for the purpose of influencing in any way the action of ... any institution the accounts of which are insured by the Federal Savings and Loan Insurance Corporation ... upon any application, advance, discount, purchase, purchase agreement, repurchase agreement, commitment, or loan, or any change or extension of any of the same, by renewal, deferment of action or otherwise, or the acceptance, release, or substitution of security therefor, shall be fined not more than $5,000 or imprisoned not more than two years, or both.
18 U.S.C. § 1014.

need not show that it was presented directly to a covered institution." *Id.* at 71.

■ We conclude that the court's instruction on this issue was more than adequate. Initially, we note that Gammage did not object to the court's charge on this ground before the jury retired, as required by the Rules. *See* Fed.R.Crim.P. 30. Where an objection to a jury instruction is raised for the first time on appeal, even an inaccurate instruction will be upheld absent "plain error." *See United States v. Birdsell*, 775 F.2d 645, 654 (5th Cir.1985). Here, the district court clearly instructed the jury of the identify of the covered institution (emphasis added):

> There are two essential elements which must be proved beyond a reasonable doubt in order to establish the offense proscribed by this law
>
> First: That the Defendant knowingly made a false statement or report concerning a material fact *to a Federal Savings and Loan Association or insured institution;* and
>
> Second: That the Defendant made the false statement or report willfully and with intent to *influence the action of the Federal Savings and Loan Association or insured institution* upon an application, advance, commitment or loan, or any change or extension thereof.
>
> An "insured institution" means any savings and loan association the accounts of which are insured by the Federal Savings and Loan Insurance Corporation.

Gammage does not indicate how this instruction is faulty in any way. It suffices to say that we perceive no plain error.[2]

Next, Gammage challenges the refusal of the district judge to give his proposed instruction regarding Texas community property law. The requested instruction stated the following:

> In a Community Property state such as Texas all property owned by either spouse during the time of marriage up until the parties are divorced or one of them dies is presumed to be Community Property jointly owned by the spouses. This is a rebuttable presumption. To rebut this presumption it must be shown that the property of one of the spouses was owned prior to marriage or was obtained after marriage by gift or inheritance.

This proposed instruction was drawn in part from Texas statutory authority.[3] Gammage argues that the omission of this instruction eviscerated his defense. The primary thrust of Gammage's strategy was to show his good faith belief that he had a community interest in the Gulf States stock.

A defendant is ordinarily entitled to an instruction on his "theory of the case." *United States v. Robinson*, 700 F.2d 205, 211 (5th Cir.1983) (citation omitted), *cert. denied*, 465 U.S. 1008, 104 S.Ct. 1003, 79 L.Ed.2d 235 (1984). However, the district court "may decline a suggested charge which incorrectly states the law, is without foundation in the evidence, or is stated elsewhere in the instructions." *Id.* A defendant is not entitled to "a judicially narrated account of 'his' facts and legal arguments." *Id.* The instructions, taken as a whole, need only "substantially cover" the issue. *See Hodges v. United States*, 363 F.2d 439, 440 (5th Cir.1966). Here the dis-

---

**2.** Although Gammage does not explicitly challenge the sufficiency of the evidence on this element, we note that the evidence was sufficient to infer Gammage's reasonable expectation that the loan application and financial statement would reach a covered institution. The loan guaranty signed by Gammage, which named the Burkburnett savings and loan as the lender, provided that "the financial statements and information regarding the Guarantors [Gammage and one other individual] heretofore delivered to the Lender are true and correct in all material respects...." The loan application, just above Gammage's signature, warned that false statements were punishable by 18 U.S.C. § 1014.

**3.** "Property possessed by either spouse during or on dissolution of marriage is presumed to be community property." Tex.Fam.Code Ann. § 5.02 (Vernon 1975).

trict court gave instructions which bore on Gammage's defense of good faith:

> You are further instructed that one who acts with honest intention is not chargeable with the specific intent necessary to establish a violation of the statute. One who expresses an opinion honestly held by him, or a belief honestly entertained by him, is not chargeable with a violation of the statute even though such opinion is erroneous and such belief is a mistaken belief.
>
> \*      \*      \*      \*      \*      \*
>
> The word "knowingly" as that term has been used from time to time in these instructions, means that the act was done voluntarily and intentionally and not because of mistake or accident. The purpose of adding the word "knowingly" is to insure that no one will be convicted for an act done because of mistake, or accident, or other innocent reason.

These instructions permitted the jury to consider Gammage's claim of mistaken belief.

Moreover, Gammage's proposed instruction, as applied to these facts, would have misstated Texas law. The district court instructed the jury regarding community property law:

> You are instructed that, under Texas law, all property, both real and personal, of a spouse owned or claimed before marriage, and that acquired during marriage by a gift, devise, or descent, is the separate property of that spouse. During the marriage the income derived from separate property belongs to the community, that is, to both husband and wife, but that fact does not alter the character or ownership of the separate property. Further, if separate property is improved with community funds or labor during the marriage, such improvement does not alter the character or ownership of the separate property, although

it may [create] a right of reimbursement in favor of the community, that is, both the husband and the wife.

At the charge conference Gammage's counsel agreed that this instruction correctly summarized Texas law, and he did not object to its use. However, Gammage still insists that the omission of the "community presumption" instruction was reversible error. We disagree.

Notwithstanding the presumption of community, Texas law states that "a spouse's separate property consists of: ... (2) the property acquired by the spouse during marriage by gift, devise, or descent...." Tex.Fam.Code Ann. § 5.01 (Vernon 1975). April acquired her interest in the Gulf States stock by devise, pursuant to her father's will. The Louisiana probate judgment, as well as her brother's testimony, established April's acquisition of this interest. Gammage, far from challenging this fact, relies upon April's acquisition by devise in order to have any claim of ownership, however chimeric his claim may be. The Texas presumption of community interest is overcome when the property is clearly traced to its separate ownership. *See, e.g., Cockerham v. Cockerham,* 527 S.W.2d 162, 167 (Tex.1975) (Johnson, J.). Gammage does not dispute the established facts which constitute the conclusive rebuttal of the community presumption. The district court did not err in refusing to misapply Texas law and thereby confuse the jury as badly as Gammage claims he was confused himself.

■ Finally, Gammage claims that the evidence of his knowledge of the falsity of his statements was insufficient to uphold the conviction.[4] We note as a procedural matter that Gammage moved for an "instructed verdict"[5] at the close of the government's case, which was denied, then called his own witnesses, but did not renew his motion at the conclusion of all the evi-

---

**4.** Gammage also claims that "the alleged misrepresentations were not false as a matter of law" and thus the evidence was insufficient. We disagree, since this argument depends on the

community presumption that we have already explained is inapposite on these facts.

**5.** Such a motion is known as a motion for judgment of acquittal. *See* Fed.R.Crim.P. 29(a).

dence. Such a procedural setting substantially alters[6] our standard of review:

> It is well recognized that where a defendant presents evidence after moving for a judgment of acquittal, he waives objection to the denial of that motion unless he renews his motion at the conclusion of all the evidence. If the motion for acquittal is not renewed at the close of the evidence, the issue of sufficiency of the evidence is reviewable on appeal only to determine whether there was a manifest miscarriage of justice.

*United States v. Merritt,* 639 F.2d 254, 256 (5th Cir.1981) (citations omitted).

The evidence was, at the least, sufficient on the issue of Gammage's knowledge of the falsity to avoid a manifest miscarriage of justice. Gammage's statement in the Burkburnett financial statement that the Gulf States stock was "registered in name of M/M G. Gammage" was patently false because no reissuance or reregistration was ever done after the death of April's father. Gammage admitted on cross-examination that he had never seen the stock certificates and had not yet received the probate judgment when the Burkburnett deal went through. Gammage also claimed *ownership in the stock, this time without expressly stating his wife's interest at all,* in connection with the Lancaster loan. In each instance the Gulf States stock constituted a major portion of what Gammage claimed as his assets in order to act as co-guarantor.[7] In each instance Gammage pocketed several thousand dollars as a result of his involvement in the deals. The jury was entitled to reject as not credible his vague assertion that an unnamed "attorney and friend" had advised him that his wife's stock had somehow become commu-

nity property. Gammage was an experienced and well educated real estate and mineral developer, not a person likely to remain confused about the status of almost one million dollars worth of property.[8] From this evidence the jury could have properly inferred *mens rea,* and we are not willing to upset that finding.

Accordingly, the judgment of the district court is AFFIRMED.

---

**6.** Ordinarily, we review the evidence in the light most favorable to the government in order to determine "whether the jury could conclude that the evidence presented at trial is inconsistent with the hypothesis of the accused's innocence." *Lentz,* 524 F.2d at 71.

**7.** In the Burkburnett financial statement, Gammage's claimed interest in the Gulf States stock was $900,000 of an asserted $1,117,875 in total assets. In the Lancaster loan application, the

stock was claimed as $950,000 of an asserted $2,824,150 in total assets.

**8.** Gammage introduced documents to show that he had claimed an interest in the Gulf States stock in other transactions. While this might lend a factfinder to believe that Gammage had no knowledge of the falsity, it could also indicate that Gammage was an inveterate prevaricator. We are not prepared to conclude that only the former inference is a permissible one.