**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Wordy Jack THOMPSON, Jr., Defendant-Appellant.**

No. 86–1211

United States Court of Appeals, Fifth Circuit.

Feb. 19, 1987.

Wordy Jack Thompson, Jr., Dallas, Tex., pro se.

William F. Alexander, Asst. U.S. Atty., Marvin Collins, U.S. Atty., Dallas, Tex., for plaintiff-appellee.

Before THORNBERRY, DAVIS and HILL, Circuit Judges.

ROBERT MADDEN HILL, Circuit Judge:

Defendant Wordy Jack Thompson, Jr., appeals from his convictions for providing materially false information in a loan application to a federally insured institution in violation of 18 U.S.C. § 1014. We affirm.

## I.

In November 1982 Thompson allegedly became involved in a scheme whereby he and others signed collateral guarantees and submitted financial statements to third parties who, in turn, submitted these materials in connection with loans made by Empire Savings and Loan Association of Mesquite, Texas. Thompson was paid a total of $25,815.54 by these third parties for the use of his name and financial statements. Empire was insured by the Federal Savings and Loan Insurance Corporation (FSLIC), which closed Empire on March 14, 1984, and took over as receiver.

After Empire went into receivership, it was discovered that Thompson was listed as co-guarantor of a loan for $846,879.58 from Empire to Ledrew, Inc., for a condominium development project. Several documents containing financial information about Thompson were in the Ledrew loan file. A financial statement filed by Thomp-

son indicated that he received $75,000 annually in "salary, bonuses, and commissions." Both the financial statement and a document entitled "Supplement to Loan Application" stated that Thompson owned 15 acres in the Mazatlan area of Mexico that was worth $175,000 and a condominium in Mexico—El Delfin—that was worth $125,000. The loan file also contained two unsigned federal income tax returns in Thompson's name. These showed that he had an adjusted gross income of $98,189 in 1980 and $104,284 in 1981.

Subsequently, Thompson was charged in a four count indictment with violations of 18 U.S.C. § 1014, which prohibits providing materially false information in a loan application to a federally insured institution. The allegedly false information was the amount of his annual salary stated on the financial statement, the value of the Mazatlan and El Delfin properties, and the amount of his adjusted gross income in 1980 and 1981. Thompson was convicted on all four counts and subsequently filed this appeal.

## II.

### A.

■ We have described section 1014[1] as a "statutory crime of knowing misrepresentation." *United States v. Davis*, 752 F.2d 963, 969 (5th Cir.1985). To sustain a conviction under section 1014 the government must prove that the defendant made a false statement to a federally insured institution for the purpose of influencing the institution's actions. *United States v. Bowman*, 783 F.2d 1192, 1197 (5th Cir. 1986). *See also Williams v. United States*, 458 U.S. 279, 284, 102 S.Ct. 3088, 3091, 73 L.Ed.2d 767 (1982) (government must prove that defendant made a false statement for the purpose of influencing a lender). We have stated that:

> [T]he essence of a [section] 1014 offense is the making of the false statement with the *intent* to influence the lender, and it is not dependent upon the accomplishment of that purpose. It is a crime of subjective intent requiring neither reliance by the bank officers nor an actual defrauding.

*United States v. Shaid*, 730 F.2d 225, 232 (5th Cir.) (emphasis in original) (citations omitted), *cert. denied*, 469 U.S. 844, 105 S.Ct. 151, 83 L.Ed.2d 89 (1984). *See also United States v. Davis*, 752 F.2d 963, 969 (5th Cir.1985); *United States v. Bonnette*, 663 F.2d 495, 498 (4th Cir.1981), *cert. denied*, 455 U.S. 951, 102 S.Ct. 1456, 71 L.Ed.2d 666 (1982).

■ We have also implicitly indicated that the statement must be false as to a material fact. *See Bowman*, 783 F.2d at 1199 (discussing materiality). While our recent decisions are ambiguous on this issue, other circuits have explicitly recognized materiality as an essential element of a section 1014 violation. *See, e.g., Bonnette*, 663 F.2d at 497; *United States v. Kramer*, 500 F.2d 1185, 1187 (10th Cir. 1974). We agree with these other circuits that materiality is an element of a section 1014 violation.[2]

---

**1.** Title 18 U.S.C. § 1014 states in pertinent part: Whoever knowingly makes any false statement or report, or willfully overvalues any land, property or security, for the purpose of influencing in any way the action of ... any *institution the accounts of which are insured by the Federal Savings and Loan Insurance Corporation* ... upon any application, advance, discount, purchase, purchase agreement, repurchase agreement, commitment, or loan, or any change or extension of any of the same, by renewal deferment of action or otherwise, or the acceptance, release, or substitution of security therefore, shall be fined not more than $5,000 or imprisoned not more than two years, or both.

**2.** The district court also viewed materiality as an element of a section 1014 action; the jury instruction stated that, *inter alia*, the government had to prove "that the defendant knowingly made a false statement or report concerning a *material* fact." (emphasis added).

The government did not object to the language of the instruction. We also note that an identical jury instruction has been used in other section 1014 cases without objection to the materiality language. *E.g., United States v. Gammage*, 790 F.2d 431, 434 (5th Cir.1986); *Bowman*, 783 F.2d at 1198 n. 7.

 However, the defendant need not directly present the false statement to a covered financial institution to be found guilty under the statute nor need the government show that the defendant knew which particular institution was involved. *Bowman*, 783 F.2d at 1199. Similarly, although the government must prove that the financial institution is one of the entities listed in section 1014, it need not prove that the defendant knew that the institution is within the ambit of section 1014. *Cf. United States v. Lentz*, 524 F.2d 69, 71 (5th Cir.1975) (the government must prove that defendant knew that the statement "was made to 'a bank' as distinguished from 'a bank insured by the F.D.I.C.' "). What the government must show is that the defendant *knew* that it was a bank that he intended to influence, *Bowman*, 783 F.2d at 1198 (emphasis in original), and that the statement is knowingly false. *United States v. Simmons*, 503 F.2d 831, 835 (5th Cir.1974).

To summarize, the government must prove beyond a reasonable doubt that:

(1) the defendant made a false statement to a financial institution;

(2) the defendant made the false statement knowingly;

(3) he did so for the purpose of influencing the financial institution's action; and

(4) the statement was false as to a material fact.

### B.

 Thompson claims on appeal that there was insufficient evidence presented for the jury to find him guilty beyond a reasonable doubt of violating section 1014. Before examining the record to see if there is sufficient evidence to support the convictions, we must be mindful of our role in reviewing the sufficiency of the evidence. "The verdict must be sustained if there is substantial evidence, taking the view most favorable to the Government, to support it." *Glasser v. United States*, 315 U.S. 60,

80, 62 S.Ct. 457, 469, 86 L.Ed. 680 (1942). We have stated that

[i]t is not necessary that the evidence exclude every reasonable hypothesis of innocence or be wholly inconsistent with every conclusion except that of guilt, provided a reasonable trier of fact could find that the evidence establishes guilt beyond a reasonable doubt. A jury is free to choose among reasonable constructions of the evidence.

*United States v. Bell*, 678 F.2d 547, 549 (5th Cir.Unit B 1982) (en banc) (footnote omitted), *aff'd on other grounds*, 462 U.S. 356, 103 S.Ct. 2398, 76 L.Ed.2d 638 (1983). Under this standard, our review of the record convinces us that there is sufficient evidence to support Thompson's convictions.

With regard to the value of the properties in Mexico, the government presented evidence which showed that Thompson had filed a certified copy of an inventory statement in connection with his divorce proceeding which stated that the combined value of the Mexican properties was $60,000. On the same day, Thompson filed his loan application and financial statements with Empire which stated that the two properties were worth $300,000. Thompson testified that he did not fill in the values of the Mexican properties on the loan papers; instead, he claimed that he signed the loan application documents while they were blank and that someone else filled in the false information later.[3] Thompson also claims that he had spent a great deal of money to improve the Mexican properties and that he had a total investment of $80,000 to $90,000 in the El Delfin condominium and $20,000 in the Mazatlan land. Even if accepted as true, however, this testimony would not account for the fact that Thompson stated in the loan application that the condominium was worth $175,000 and that the Mazatlan property was worth $125,000.

---

**3.** No question is raised concerning whether Thompson's signature on the documents is gen-

uine. Thompson's ex-wife as well as an FBI expert testified that the signatures were real.

■ In his testimony, Thompson admitted that he knew he was creating a document which would be presented to a financial institution to get money to build some condominiums. The jury could have reasonably disbelieved Thompson's statements that he had only signed a blank application form and that someone else had filled in the values of the Mexican properties.[4] Thus, we believe that the government presented sufficient evidence to support Thompson's conviction for falsely representing the value of the Mexican properties on the financial statement he submitted to Empire.[5]

Thompson also contends that there is insufficient evidence to allow the jury to find that his statements concerning his yearly salary and the amount of his adjusted gross income in 1980 and 1981 violate section 1014. This contention is also without merit. As we indicated earlier, Thompson conceded that the loan application documents would be presented to Empire in order to get money to build some condominiums. In his financial statement submitted in connection with his loan applications, Thompson submitted what he represented as his Form 1040 income tax return for 1980. This return showed an adjusted gross income of $98,189 in 1980 and $104,284 in 1981. Thompson also indicated that the total of his "salary, bonus, and commissions" was $75,000.

■ At trial, however, the government presented a certified copy of the Form 1040 returns that Thompson had filed with the Internal Revenue Service (IRS) for 1980 and 1981 which revealed discrepancies with the returns that Thompson had submitted to Empire. The returns filed with the IRS indicated that Thompson only had business income of just under $45,000 in 1980 and just over $43,000 in 1981. On the line of the Form 1040 labeled "Wages, Salaries, Tips, etc.," Thompson's returns for both years indicated that he had not earned any salary in either year. Furthermore, the returns filed with the IRS indicated that the adjusted gross income for himself *and*

---

4. The district court treated the issue of materiality as a matter left in the hands of the jury and gave the jury an instruction on the issue. We have not previously decided whether the issue of materiality under section 1014 should be decided by the jury or the court. In *Bowman* the court's discussion of materiality leaves it unclear whether the court thought that materiality is a question of fact for the jury to decide or whether it is a question of law for the court to decide. 783 F.2d at 1199.

The Fourth Circuit, analogizing to 18 U.S.C. § 1001, the general statute prohibiting false statements to the government of the United States, has held that the issue of materiality in section 1014 cases is a legal question to be decided by the court. *United States v. Whaley*, 786 F.2d 1229, 1232 (4th Cir.1986). Similarly, we have recognized in many cases that the materiality of false statements is a question for the court. *See United States v. Johnson*, 718 F.2d 1317, 1324 & n. 20 (5th Cir.1983) (en banc) (collecting cases). Accordingly, we hold that the materiality of any false statements must be decided by the court and not the jury. In its charge the court should inform the jury that the court has determined that the statements are material and that the jury must accept this finding.

Although the district court in this case erroneously left the issue of materiality to the jury and therefore did not decide whether Thompson's

statements related to a material fact, we conclude as a matter of law that the actual value of the Mexican properties and the value of the properties indicated by Thompson on his application were relevant to the decisions made by the bank officers, would influence their actions, and thus are material. Our conclusion is bolstered by the fact that the receiver for the FSLIC testified that the information supplied by Thompson would be used, for example, by Empire to verify bank deposits that Thompson indicated he had. It is reasonable to conclude that the other information supplied by Thompson would also affect Empire's decision regarding Thompson's loan application.

5. It is well settled that when the judgment of the district court is correct, it may be affirmed on different grounds. *See, e.g., Terrell v. University of Texas System Police*, 792 F.2d 1360, 1362 n. 3 (5th Cir.1986), *cert. denied*, — U.S. —, 107 S.Ct. 948, 93 L.Ed.2d 997 (1987); *O'Malley v. United States Fidelity and Guaranty Co.*, 776 F.2d 494, 499 n. 1 (5th Cir.1985); *Bickford v. International Speedway Corp.*, 654 F.2d 1028, 1031 (5th Cir.Unit B. 1981); *United States v. Hall*, 565 F.2d 917, 920 (5th Cir.1978). Consequently, since the question of materiality is a legal question subject to de novo review, we can affirm Thompson's convictions even though the district court improperly permitted the jury to determine the materiality of his false statements.

*his wife* totaled only $61,793.93 in 1980 and $59,567.17 in 1981. We hold that the discrepancies in the two sets of returns are material. *See* nn. 4 and 5, *supra.* In addition, the fact that the copies of the tax returns given to the bank do not have Thompson's signature on them does not preclude the jury from inferring that he had supplied the figures which appeared on the tax returns filed with the loan application. During the trial one of the FBI agents testified that Thompson had indicated that the copies of the tax returns he filed with Empire accurately stated his income.[6] Conversely, Thompson testified that while he had discussed his income tax returns with Elkins, he did not help Elkins prepare any of the returns which were found in the loan file and did not know whether Elkins had submitted any tax returns in his behalf.

The jury was basically presented with the choice of believing the FBI agent's testimony or Thompson's testimony. Under these circumstances, and in the context of the other evidence in the case, a "reasonable trier of fact could find that the evidence establishe[d] guilt beyond a reasonable doubt" that Thompson's statements concerning his yearly salary and his 1980 and 1981 tax returns violated section 1014. *Bell,* 678 F.2d at 549.

## C.

■ Thompson also makes several other contentions. First, Thompson contends that the jury charge given by the trial court required that the jury had to find that he, and not a third party, communicated the false information to Empire. We disagree. The district court explicitly instructed the jury that it was "not necessary that the defendant physically deliver the statement or report to the insured institution." This instruction accurately represented our precedent. *See Bowman,* 783 F.2d at 1199. It makes no difference who communicated the false matter to Empire as long as Thompson made the false statement with the intent to influence the bank. *See Shaid,* 730 F.2d at 232. Thompson admitted in his testimony that the loan application documents were submitted to the bank in order to get money to build condominiums.

■ Second, Thompson contends that the records of Empire were improperly admitted into evidence. This assertion is also without merit. *See United States v. Kennedy,* 564 F.2d 1329, 1343 (9th Cir.1977), *cert. denied,* 453 U.S. 944, 98 S.Ct. 1526, 55 L.Ed.2d 541 (1978) (federal income tax returns properly admitted to prove that entries in financial statement were misleading under section 1014); Fed.R.Evid. 803(6).

Finally, Thompson asserts that there was prosecutorial misconduct and vindictiveness. Our examination of the record convinces us that these claims are meritless.

## III.

We find no merit to Thompson's contentions. Accordingly, the judgment of the district court is AFFIRMED.

---

6. The agent testified as follows:

 Mr. Thompson told Mr. Connelly that he did not have those tax returns, they were with his accountant. Mr. Connelly told Mr. Thompson that that could be taken care of, there was a certified public accountant nearby who could help prepare these documents.

 Mr. Thompson was introduced to an individual named Bob Elkins who was a certified public accountant. Mr. Thompson sat down with Mr. Elkins and discussed information concerning employment, salary, and the other necessary items for preparation of financial statements and the income tax returns.

 Mr. Thompson stated when we showed him these 1980, 1981 tax returns that although these were not the tax returns that he has filed with the Internal Revenue Service, *the dollar amounts which appeared on them was approximate to the amount which would have appeared on his true 1980 and '81 tax returns.* (emphasis added).