**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Robert LUEBEN, Defendant–Appellant.**

No. 87–1729.

United States Court of Appeals, Fifth Circuit.

Feb. 12, 1988.

---

William J. Ruhe, Jr., Dallas, Tex., for defendant-appellant.

Joseph M. Revesz, Asst. U.S. Atty., Marvin Collins, U.S. Atty., Dallas, Tex., for plaintiff-appellee.

Before GOLDBERG and CAROLYN DINEEN KING[*], Circuit Judges, and WOODWARD,[**] District Judge.

PER CURIAM:

Robert Lueben appeals from the district court's finding that false statements made by Lueben to federally insured savings and loan associations were material. As we find that the district court's finding of materiality was not in error as a matter of law, we affirm.

## I.

The facts of this case are set out in the original opinion of this panel, *see United States v. Lueben*, 812 F.2d 179, 181–82 (5th Cir.1987) ("*Lueben* I"), and will not be given extensive treatment here.[1] In *Lueben* I,

---

[*] Formerly Carolyn Dineen Randall.

[**] District Judge of the Northern District of Texas, sitting by designation.

[1] Suffice it to say that Lueben was indicted for submitting false loan applications, income tax returns, and financial statements to savings and loan associations for the purposes of obtaining condominium development loans, in violation of 18 U.S.C. § 1014, and for conspiring with and aiding and abetting others in doing so, in violation of 18 U.S.C. §§ 371 and 2. Furthermore, Lueben was indicted for violating 18 U.S.C. § 1001, which prohibits the

we reversed Lueben's conviction because the district court excluded expert testimony offered by Lueben on the question of the materiality of the false statements. While we noted that prior decisions of this court have held the question of the materiality of a false statement in a section 1001 prosecution to be one for the district court to decide, we also recognized that the district court had submitted the materiality issue to the jury with respect to the section 1014 counts. We expressly declined to decide the issue of whether materiality in a section 1014 prosecution is also a question for the district court.

We had occasion to reconsider that decision in *United States v. Lueben*, 816 F.2d 1032 (5th Cir.1987) ("*Lueben* II"). In *Lueben* II, we recognized that six days prior to our decision in *Lueben* I, another panel of this court held that the question of the materiality of a false statement in a section 1014 prosecution, as in a section 1001 prosecution, is for the district court, not the jury, to decide. *See United States v. Thompson*, 811 F.2d 841, 845 n. 4 (5th Cir.1987). In *Lueben* II, we concluded that *Thompson*, decided before *Lueben* I, should control the disposition of the case. Accordingly, we saw no need to "reverse Lueben's convictions, because the district court may itself decide the materiality issue at an evidentiary hearing held for that purpose." *Lueben* II, 816 F.2d at 1033. Therefore, we vacated that part of *Lueben* I which reversed Lueben's convictions and remanded the case to the district court for an evidentiary hearing at which Lueben's expert would be allowed to testify, and be subjected to cross-examination, on the issue of materiality. The district court was charged with deciding whether Lueben's statements were material with respect to both the section 1001 and the section 1014 counts. *Id.* Finally, we ordered that any appeal from the district court's determination on remand be to this panel.

Following our mandate on remand, the district court conducted a hearing on July 9, 1987, at which time Lueben's counsel reported that he had diligently attempted but was unable to locate John Bezecny ("Bezecny"), Lueben's expert witness. The United States, Lueben, and Lueben's counsel agreed that the district court should determine the materiality of the false statements based on designated excerpts from the trial transcripts and designated exhibits. On September 10, 1987, the district court issued a "Memorandum Opinion and Order" in which it found that the false statements were material under sections 1001 and 1014 and, accordingly, affirmed Lueben's convictions on all counts. Lueben timely filed notice of appeal from that decision.

■ On appeal, Lueben has mistakenly framed his objection to the district court's decision as a sufficiency of the evidence challenge. Lueben, therefore, would have us treat the materiality determination as a question of fact. We are unable to do so, however, as it is well established that the determination of materiality is a question of law for the district court to decide even though it rests upon a factual evidentiary showing by the prosecution. *United States v. Lichenstein*, 610 F.2d 1272, 1278 (5th Cir.), *cert. denied*, 447 U.S. 907, 100 S.Ct. 2991, 64 L.Ed.2d 856 (1980); *see also Thompson*, 811 F.2d at 845 n. 4. The district court's finding is subject to complete review, unrestricted by the "clearly erroneous" standard. *Lichenstein*, 610 F.2d at 1278; *see also United States v. Hausmann*, 711 F.2d 615, 616 (5th Cir. 1983). Therefore, we must determine whether the district court's finding that the false statements were material was erroneous as a matter of law.[2]

making of a false statement in any matter within the jurisdiction of a federal agency. Lueben was convicted on all counts and appealed to this court.
*United States v. Lueben*, 816 F.2d 1032, 1033 (5th Cir.1987) ("*Lueben* II").

**2.** Lueben also argues that his sixth amendment right to a trial by jury was abridged by our characterization of the materiality issue as a question of law. As we have noted, materiality is a question of law in this circuit to be decided by the district court. *Thompson*, 811 F.2d at 845 n. 4; *Lueben* II, 816 F.2d at 1033. For a general discussion of the constitutional underpinnings of this rule, see *United States v. Johnson*, 718 F.2d 1317, 1323–24 (5th Cir.1983) (en banc).

## II.

■ We have adopted similar definitions of "materiality" in section 1014 and section 1001 prosecutions. As we wrote in *Lueben I*:

In a section 1001 prosecution, "[a] material false statement ... is one that is *capable* of affecting or influencing the exercise of a government function." Similarly, in a section 1014 prosecution, the false statements must have the "capacity to influence" the institution's decision to make the loan.

812 F.2d at 183 n. 3 (citations omitted) (emphasis in original). It is immaterial, therefore, whether the false statements actually affected the savings and loan associations or government agency, as reliance is not an issue in either a section 1001 or a section 1014 prosecution. *See, e.g., United States v. Stephens,* 779 F.2d 232, 237 (5th Cir.1985); *Lichenstein,* 610 F.2d at 1278.

■ The district court based its finding of materiality primarily on the testimony of Bezecny,[3] an independent financial consultant, the testimony of Mike Lee,[4] an examiner for the Federal Home Loan Bank of Dallas, and an examination of pertinent precedent in the area. After an independent review of the record and prior case law on the subject, we conclude that the district court did not err in finding Lueben's false statements to be material.

Lueben, relying on Bezecny's testimony, argues that since the loan approval calculus was based almost exclusively on the appraisal value of the property, his submission of false financial statements, tax returns, and loan applications could not have influenced the savings and loan institutions' decisions. According to Lueben, the false statements in question would also be immaterial in a Federal Home Loan Bank examination. We do not agree. Lueben argues that while "[h]is net worth and its liquidity was material," his income was not. He supports this proposition by arguing that in the event of default, the lending institutions would be unable to attach his income, personal possessions, and homestead property—all of which he overvalued—under Texas law. We have held that false statements as to the extent of indebtedness are "obviously" capable of influencing action on a loan application. *See Stephens,* 779 F.2d at 237. We are loathe to conclude that lending institutions would evaluate Lueben as a credit risk *solely* on the basis of his attachable assets. As Lee testified, when evaluating financial ability to repay a loan, both the lending institutions and government examiners

---

We are bound by those determinations. *United States v. Nichols,* 781 F.2d 483, 484–85 (5th Cir.1986).

3. The district court summarized Bezecny's testimony as follows:

John Bezecny, Defendant's expert on materiality, testified in substance that false tax returns of a guarantor would not be considered by, and did not have the capacity to influence, savings and loan institutions in determining whether to make a commercial real estate loan. He testified that, in deciding whether to make such a loan, an institution would first look to the value of the real estate being financed in determining whether to loan the money, then to the assets of the corporate borrower, and then to the liquid assets of the guarantor. Bezecny testified that federal regulations do not require the filing of a guarantor's tax returns with savings and loan institutions to obtain a commercial real estate loan of the type here involved; therefore, he concluded, the false tax returns did not have the capacity to influence loan officers at these institutions. (Citations to transcript omitted)

4. The district court summarized Lee's testimony as follows:

Mike Lee, an examiner for the Federal Home Loan Bank of Dallas and a witness for the government, testified in substance that the false statements supplied by Defendant would be material to a savings and loan institution in determining whether to make a commercial real estate loan and would be material in examinations conducted by the Federal Home Loan Bank. Lee testified that savings and loan institutions look first to the borrower to repay the loan, rather than going through the time and expense of obtaining and selling the collateral. He concluded that a savings and loan would look to the tax returns and the stated income in the loan application to verify the borrower's ability to repay the loan. Further, he testified that examiners for the Federal Home Loan Bank would use the borrower's tax returns to verify the income level stated on the loan application, and that the institution's credit decision will be based on all information provided. (Citations to transcript omitted)

would have looked to income and cash flow as well as to net assets.

Moreover, Lueben's argument is logically inconsistent. If, as Lueben argues, the false statements were absolutely immaterial and "[n]o one could/would/should have considered income" in these transactions, the question still remains as to why Lueben submitted them in the first place. He has offered no explanation for a consistent pattern of submitting false income statements in loan transactions. It is certainly reasonable to conclude that Lueben submitted these false statements in order to favorably influence the lending process. Moreover, if these statements were immaterial, why were they required by the lending institutions in each of the transactions? We think it reasonable to conclude that the statements served some purpose in the lending process since they were not required by regulation and, as the district court concluded, "cannot reasonably be treated as mere verbiage or surplusage." Lee testified that the lending institutions would review all of the information provided in making their credit decisions. Furthermore, Lee testified that Federal Home Loan Bank examiners would use tax returns to verify the income level stated on loan applications. As we agree with the district court that the false statements "had the capacity to influence a savings and loan institution's decision to make a loan and the capacity to influence the exercise of a government function," we conclude that the false statements were material.[5]

### III.

For the foregoing reasons, we AFFIRM.

---

5. This conclusion is in accord with our decision in *Thompson*. In *Thompson*, the defendant in a section 1014 prosecution overestimated the value of certain property he owned in Mexico on a financial statement and loan application, and submitted a false set of income tax returns to a savings and loan association. We concluded that the discrepancies between the tax returns submitted to the lending institution and those submitted to the IRS were material. *Thompson*, 811 F.2d at 844. Moreover, we concluded "as a matter of law that the actual value of the Mexican properties and the value of the properties indicated by Thompson on his application were relevant to the decisions made by the bank officers, would influence their actions, and thus are material." *Thompson*, 811 F.2d at 845 n. 4.