**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 12-3623
_____

UNITED STATES OF AMERICA

v.

JONG SHIN,

Appellant

_____

On Appeal from the United States District Court
for the District of New Jersey
(District Court No.:1-10-cr-00208-001)
District Judge:  Honorable Renee M. Bumb

_____

Submitted under Third Circuit LAR 34.1(a)
on March 3, 2014

(Opinion filed:  March 19, 2014)

Before:  RENDELL, SMITH and HARDIMAN, Circuit Judges

_____

O P I N I O N

_____

**RENDELL**, Circuit Judge:

After a jury trial in the United States District Court for the District of New Jersey,

Jong Shin was found guilty of: (1) conspiracy to commit wire fraud, in violation of 18

U.S.C. §§ 1343 and 1349; (2) money laundering, in violation of 18 U.S.C. § 1956(h); and

(3) false statements on a loan or credit card application, in violation of 18 U.S.C. §§ 1014

and 2.[1] Shin appeals the judgment of conviction and her sentence of 186 months'

imprisonment. For the reasons that follow, we will affirm.

## I. Background[2]

From May 2006 to December 2006, Shin orchestrated a scheme to flip real estate

in Atlantic City, New Jersey at a substantial profit by submitting fraudulent loan

applications, inflated appraisals, and falsified closing documents to mortgage lenders.

Between May and October 2006, Shin purchased seven Atlantic City properties. Without

having improved any of the properties, Shin re-sold them at inflated prices to five straw

purchasers she had recruited. To lure the straw purchasers, Shin paid them a few

thousand dollars and promised to make the mortgage payments if they submitted

mortgage applications, went to the closing, and signed the appropriate paperwork.

To obtain the mortgages, Shin and a mortgage broker at Summit Mortgage

Bankers arranged and prepared Uniform Residential Loan Applications (URLAs) for

each straw purchaser, containing false statements about the purchasers' employment,

income, and plans to reside at the properties. Shin also paid a real estate appraiser to

prepare fraudulent appraisals, inflating the value of the properties. Finally, Shin paid a

closing agent at Equity Title to prepare fraudulent closing documents that hid the fact that

the straw purchasers had not invested any money in the properties, and that Shin (as

---

[1] Shin was convicted of two counts under 18 U.S.C. § 1014.
[2] The District Court had subject matter jurisdiction under 18 U.S.C. § 3231 and this Court
has jurisdiction under 28 U.S.C. § 1291.

opposed to the straw buyers) received the loan proceeds in each of the transactions. Shin participated in at least ten fraudulent real estate closings and collected approximately $1.2 million. All of the mortgages eventually went into default and most of the properties were foreclosed upon by the lender. By the end of Shin's scheme, the victim banks were owed an amount exceeding $4,600,000.

On October 3, 2011, a jury trial began before Judge Renee Marie Bumb in the District of New Jersey. Shin was found guilty on all counts. At sentencing, after calculating a Guidelines range of 168-210 months' imprisonment based on a total offense level of 35 and a criminal history category of I, the District Court sentenced Shin to 186 months' imprisonment.

## II. Discussion

Shin raises five arguments on appeal: (1) the District Court's jury instruction on "reasonable doubt" was improper; (2) the District Court plainly erred in admitting co-conspirators' plea agreements during direct examinations; (3) the District Court did not have jurisdiction because there was insufficient evidence of a federal offense; (4) the sentence imposed was substantively unreasonable; and (5) Shin received ineffective assistance of counsel at trial and at sentencing. We address each of these arguments, below.

### A. The "Reasonable Doubt" Jury Charge

Since Shin did not object at trial to the District Court's jury instruction on "reasonable doubt," we review for plain error. *See United States v. Bobb*, 471 F.3d 491, 499-500 (3d Cir. 2006). The District Court used our Model Jury Instruction on the issue

3

of reasonable doubt. *See* Third Circuit Model Jury Instructions § 3.06. Shin objects to the portion of the instruction which states: "[Reasonable doubt] is a doubt of the sort that would cause [an ordinary reasonable person] to hesitate to act in matters of importance in his or her own life." *Id.* Shin argues that this instruction does not adequately convey that "reasonable doubt" is a higher standard of proof than the "preponderance of the evidence" standard because a reasonable person might hesitate to make important decisions in everyday life even if something were only more likely than not to be true.

A district court is not required to define reasonable doubt as long as the court instructs the jury on the necessity that the defendant's guilt be proven beyond a reasonable doubt. *Victor v. Nebraska*, 511 U.S. 1, 5 (1994). We have held that "[w]hen an attack upon a jury charge is based upon the trial court's instruction on reasonable doubt, '[t]he constitutional question . . . is whether there is a reasonable likelihood that the jury understood the instructions to allow conviction based on proof insufficient to meet the [constitutional] standard." *United States v. Hernandez*, 176 F.3d 719, 728 (3d Cir. 1999) (quoting *Victor*, 511 U.S. at 6). Here, considering the language Shin challenges in the context of the full charge, we find that there is no reasonable likelihood that the jury understood the instructions to allow conviction on less than proof beyond a reasonable doubt. We have expressly approved these instructions in the past and see no reason to disturb that decision. *See United States v. Hoffecker*, 530 F.3d 137, 175 (3d Cir. 2008) (noting approval of language mirroring model instruction in prior case, *Hernandez*). We therefore find that the District Court did not err in its jury instructions.

B. Admission of Co-Conspirators' Plea Agreements

We review Shin's objection to the admission of her co-conspirators' plea agreements for plain error because she did not object at trial. *See* Fed. R. Crim. P. 52(b). Shin argues that the government improperly bolstered the credibility of its witnesses by introducing multiple cooperation agreements in its case in chief. She states that guilty plea agreements may only be admitted into evidence after the credibility of a witness has been attacked. We have clearly held, however, that a cooperating witness' plea agreement is admissible as part of the government's principal case. *See United States v. Universal Rehab. Servs. (PA), Inc.*, 205 F.3d 657, 670 (3d Cir. 2000) (en banc). We explained that "evidence of a testifying witness's guilty plea or plea agreement may be introduced for probative, and therefore permissible, purposes," such as, "to allow the jury accurately to assess the credibility of the witness." *Id.* at 665. Even when a witness' credibility is not affirmatively attacked, a plea agreement may be properly introduced because the credibility of a co-conspirator testifying to have participated in a crime for which the defendant has been charged, "will automatically be implicated." *Id.* at 666 (quoting *United States v. Gaev*, 24 F.3d 473, 477 (3d Cir. 1994)). We explained:

> Questions will arise in the minds of the jurors whether the co-conspirator is being prosecuted, why he is testifying, and what he may be getting in return. If jurors know the terms of the plea agreement, these questions will be set to rest and they will be able to evaluate the declarant's motives and credibility . . . . [A]n attack is not always necessary. . . .

*Id.* Here, the cooperating witnesses immediately admitted their participation in Shin's criminal activity during direct examination. Their credibility, therefore, automatically came into question and the government properly offered their plea agreements into evidence. We find no error in their admission.

5

C. Sufficiency of the Evidence

We apply a "particularly deferential standard of review" to challenges to the sufficiency of the evidence supporting a conviction. *United States v. Powell*, 693 F.3d 398, 401 n.6 (3d Cir. 2012). "We view all evidence in the light most favorable to the government, and sustain conviction as long as 'any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *Id.* (quoting *United States v. Dent*, 149 F.3d 180, 187 (3d Cir. 1998)).

Shin concedes that she "may have violated state law," by submitting fraudulent loan applications to a non-federally insured institution, but argues that she did not violate federal law because she personally did not submit a URLA to a federally insured bank. Appellant's Br. 35. Section 1014 of title 18 of the United States Code criminalizes "knowingly mak[ing] any false statement or report . . . for the purpose of influencing in any way the action" of a Federal Deposit Insurance Corporation (FDIC) insured bank upon a loan. 18 U.S.C. § 1014. We have never held that to be liable under § 1014 a defendant must personally submit the false statements to the federally insured bank; rather, use of a third party conduit could suffice. The Fifth and Ninth Circuits have held that a defendant need not know which particular bank his false statements will be presented to or that the institution is federally insured – "it is enough that he knew the false statements were to be presented to a bank." *United States v. Bellucci*, 995 F.2d 157, 159 (9th Cir. 1993) (per curiam); *see also United States v. Thompson*, 811 F.2d 841, 844 (5th Cir. 1987) (holding that government must merely show that "defendant knew that it was a bank that he intended to influence") (emphasis omitted).

6

Here, there was more than enough evidence for a rational jury to convict Shin under § 1014. Shin does not dispute that the government presented evidence that J.P. Morgan Chase (a federally insured bank) provided loans in at least three of the real estate transactions for which she was indicted. The government also presented evidence that Shin prepared false URLAs for at least two of her straw purchasers and that she directed them to submit their URLAs to her co-conspirator, Esther Zhu, a mortgage broker at Summit Mortgage Bankers. Zhu submitted the URLAs to J.P. Morgan Chase. Based on the fraudulent URLAs and the other falsified documents, J.P. Morgan Chase approved and funded the loans.

The District Court denied Shin's Rule 29(c) motion for a judgment of acquittal on the grounds that a jury could have found Shin guilty based on any of three alternate theories:

> (1) [Shin's] knowledge, when she prepared the fraudulent loan applications at issue, that they would ultimately be submitted to [J.P. Morgan] Chase; (2) [Shin's] aiding and abetting of her co-conspirators in committing these offenses; and (3) the fact that [] these offenses were committed in the scope and in furtherance of the wire fraud conspiracy and the acts were reasonably foreseeable consequences of the conspiracy.

(App. 1298-99.) We agree. *See* 18 U.S.C. § 2(b) ("Whoever willfully causes an act to be done which if directly performed by him or another would be an offense against the United States, is punishable as principal."); *United States v. Lopez*, 271 F.3d 472, 480 (3d Cir. 2001) (holding that the "criminal act of one conspirator in furtherance of the conspiracy is 'attributable to the other[] [conspirators] for the purpose of holding them

7

responsible for the substantive offense") (quoting *Pinkerton v. United States*, 328 U.S. 640, 647 (1946)). There was sufficient evidence to support Shin's conviction.

D. Reasonableness of the Sentence

Shin argues that her sentence was substantively unreasonable because "she was a first time offender with compelling case characteristics." Appellant's Br. 23. We review the District Court's sentence under an abuse of discretion standard. *United States v. Gall*, 552 U.S. 38, 49 (2007). We consider both procedural and substantive unreasonableness. *Id.* at 51. We will affirm a procedurally sound sentence "unless no reasonable sentencing court would have imposed the same sentence on that particular defendant for the reasons the district court provided." *United States v. Siddons*, 660 F.3d 699, 708 (3d Cir. 2011) (internal quotation marks omitted). "For a sentence to be substantively reasonable, a district court must apply the § 3553(a) factors reasonably to the circumstances of the case." *United States v. Lessner*, 498 F.3d 185, 204 (3d Cir. 2007)

Shin's Guidelines range was 168-210 months and she was sentenced to 186 months' imprisonment. She argues that this sentence was unreasonable because she was a first time offender and had come from a difficult background. Her father had been an alcoholic, her parents had separated, and she had lived with her maternal grandmother since the age of 10. Shin's only child died at the age of 19 after suffering for several years from a genetic neurological disease. In spite of these difficult life circumstances, Shin had maintained employment as a registered nurse for twenty years prior to her incarceration. Finally, Shin pointed out that her co-conspirators received much lighter sentences than she did (some received only a day in custody).

8

Shin's mitigation arguments were conveyed to the District Court in the Presentence Investigation Report, Shin's Sentencing Memorandum, and again by defense counsel at sentencing. (*See* Presentence Report ¶¶ 144-170; App. 1222-48; *id.* at 1151-59.) The record demonstrates that the District Court gave meaningful consideration to Shin's arguments for leniency and the § 3553(a) factors. (App. 1163-68.) The Court specifically addressed Shin's lack of a criminal history, her remorse, the loss of her son, and her difficult childhood. (*Id.* at 1164-67.) It also expressly considered the need to avoid unwarranted sentencing disparities but noted that Shin stood "in stark contrast to those others that [it] sentenced because they followed [her], they believed in [her], [she] connived them and [she] selfishly used them for [her] own benefit." (*Id.* at 1165.) The Court stated, "You didn't have it easy, but just because you didn't have it easy growing up doesn't mean that you can turn around and abuse and destroy the lives of people who thought they were your friends." (*Id.*) The Court concluded that a sentence within the Guidelines range was warranted. Because it acted within the bounds of its discretion in doing so, Shin's sentence was substantively reasonable.

E. Ineffective Assistance of Counsel

Shin argues that her trial and sentencing counsel were ineffective because trial counsel did not move to dismiss the indictment on the insufficiency of the evidence and because sentencing counsel failed to present certain mitigation arguments at sentencing. Generally, we do not review claims of ineffective assistance of counsel on direct appeal because a district court is "the forum best suited to developing the facts necessary to determining the adequacy of representation." *Massaro v. United States*, 538 U.S. 500,

505 (2003). We may, however, address a claim of ineffective assistance of counsel on direct appeal "[w]here the record is sufficient to allow determination of [the issue]." *United States v. Headley*, 923 F.2d 1079, 1083 (3d Cir. 1991).

Here, there is no need for further factual development. Under *Strickland v. Washington*, 466 U.S. 668 (1984), to establish ineffective assistance of counsel a criminal defendant must show that counsel's conduct was deficient, *id.* at 690, and that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. Shin has not shown that her lawyers' allegedly deficient conduct prejudiced her in any way. As we have already noted, the evidence in this case was more than sufficient for a reasonable jury to have found Shin guilty of the offenses for which she was convicted. A motion to dismiss the indictment on the insufficiency of the evidence, therefore, would have been fruitless.

Shin argues that her sentencing counsel's performance was deficient because he failed to set forth the mitigation arguments which Shin now raises on appeal. All of Shin's allegedly "new" mitigation arguments, however, were presented to the District Court in the Presentence Investigation Report, Shin's Sentencing Memorandum, or by Shin's lawyer at the sentencing. (*See* Presentence Report ¶¶ 144-170; App. 1222-48; *id.* at 1151-59.) The District Court considered and rejected these arguments. There is nothing to suggest that but for counsel's performance, Shin would have received a lower sentence. Thus both of Shin's claims for ineffective assistance of counsel will be dismissed.

### III. Conclusion

For the reasons set forth above, we will affirm Shin's judgment of conviction and her sentence.