**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Peter BELLUCCI, Defendant–Appellant.**

**No. 92–10517.**

United States Court of Appeals,
Ninth Circuit.

Submitted May 25, 1993.*

Decided June 4, 1993.

---

* This panel unanimously agrees that this case is appropriate for submission without oral argument. Fed.R.App.P. 34(a); 9th Cir.R. 34-4.

Daniel J. Broderick, Asst. Federal Public Defender, Sacramento, CA, for defendant-appellant.

Donald W. Searles, Asst. U.S. Atty., Sacramento, CA, for plaintiff-appellee.

Before HUG, WIGGINS and THOMPSON, Circuit Judges.

PER CURIAM:

Peter Bellucci appeals his conviction upon a jury verdict of making false statements to a financial institution, in violation of 18 U.S.C. § 1014. Bellucci claims there was insufficient evidence that he knowingly made false statements to a bank because he personally made no statements to a bank, and he did not knowingly cause false statements to be made

to a bank. He also argues that his Sixth Amendment rights under the Confrontation Clause were violated when the district court permitted the government to use hearsay evidence to establish the federally insured status of the bank, an element of the offense.

## I

There is no dispute that the statements contained in Bellucci's loan application were false, and that he knew the information was false. The critical question is whether there was sufficient evidence for the jury to conclude that Bellucci "was responsible in whole or in part for the fact that the [loan application] set forth false material information." *United States v. Olano,* 934 F.2d 1425, 1435 (9th Cir.1991), *rev'd on other grounds,* ‒ U.S. ‒‒, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993).

■ Section 1014's proscription of knowing misrepresentation "reach[es] a defendant's knowledge of the statement's presentation to banks generally[,] as distinguished from a particular bank." *United States v. Lentz,* 524 F.2d 69, 71 (5th Cir.1975). The defendant need not make the false statements directly to a bank to be convicted under the statute, nor need the defendant know which particular institution was involved; it is enough that he knew the false statements were to be presented to a bank. *United States v. Thompson,* 811 F.2d 841, 844 (5th Cir.1987); *United States v. Bowman,* 783 F.2d 1192, 1199 (5th Cir.1986). We view the evidence presented and the reasonable inferences to be drawn therefrom in the light most favorable to the verdicts. *Glasser v. United States,* 315 U.S. 60, 80, 62 S.Ct. 457, 469, 86 L.Ed. 680 (1942).

■ The evidence shows that Ms. Martello left the loan application packages with Bellucci, who partially filled in one and supplied financial schedules from which Ms. Martello filled in the remainder of one application and most of the second. Bellucci signed the applications, just below a statement that read:

> The undersigned applies for the loan indicated in this application ..., and represents ... that all statements made in this application are true and are made for the purpose of obtaining the loan.... The original or a copy of this application will be retained by the lender.... I/We fully understand that it is a federal crime punishable by fine or imprisonment, or both, to knowingly make any false statements concerning any of the above facts as applicable under the provisions of Title 18, United States Code, Section 1014.

Thus, even if it were true that Ms. Martello simply checked the box marked "no" to indicate that Bellucci was not involved in a lawsuit without seeking Bellucci's response to that question, by signing the form Bellucci adopted the lie as his own and represented it as true. He also indicated his understanding that the form would go to the ultimate lender. This evidence undermines Bellucci's claim that Ms. Martello presented the forms to a bank without his knowledge or consent.

Moreover, Bellucci testified that he understood Ms. Martello would use the loan applications to "go shop for loans" and that it is "customary for a broker like that to look everywhere" for a loan. There was evidence that Bellucci had obtained hundreds of loans during his long career as a developer and builder, and that he was familiar with the manner in which the lending process operates. In view of Bellucci's familiarity with mortgage and construction lending, a rational jury could easily infer beyond a reasonable doubt that Bellucci knew Ms. Martello would present his loan application to a variety of financial institutions, including banks.

Bellucci's argument that the false statements were ultimately conveyed to a bank because the mortgage broker "did not do the job she was hired to do" by verifying and correcting his misstatements is meritless. Bellucci cannot insulate himself from liability for making concededly false statements to a mortgage broker by claiming that he was relying upon her to detect and correct his knowing misrepresentations. *See Lentz,* 524 F.2d at 71. This is particularly so where the assignments of notes Bellucci claimed to own were not recorded, and so could not have been detected through a search of the public records.

Finally, there was evidence that after the loan was approved, Bellucci continued to

make misrepresentations to the bank to influence it to continue to disburse funds from the loan. A jury could infer from this deliberate deception intended to influence the bank's administration of the loan that Bellucci's false statement's on the loan application were likewise deliberate and meant to influence the bank's decision to make the loan. The evidence was sufficient to support the conviction.

## II

■ Bellucci contends that the district court violated his rights under the Confrontation Clause by admitting the bank's FDIC certificate of insurance, which he contends is hearsay evidence, to prove the federally insured status of the bank.[1] The government responds with a host of cases establishing that an FDIC certificate of insurance and testimony of a bank officer as to the insured status of the bank are sufficient evidence of that element of the offense to support a jury's verdict, none of which address the question whether such evidence is hearsay.

■ Although Bellucci is correct that the government must prove that the bank was federally insured, he is not entitled to have that element proven solely by direct evidence, i.e., by the FDIC representative who authorized the insuring of the bank's accounts. Like any other element of the offense, it may be proven by circumstantial evidence as well as direct evidence, so long as the jury could infer from the evidence presented, beyond a reasonable doubt, that the bank was federally insured. *United States v. Brunson*, 907 F.2d 117, 119 (10th Cir.1990). There is no question the FDIC certificate of insurance was sufficient, provided it was admissible. *United States v. Jackson*, 430 F.2d 1113, 1115–16 (9th Cir.1970) .

■ Both the district court and the government in this case appeared to believe that the evidentiary rules dispensing with proof of authenticity, Federal Rules of Evi-

dence 901–903, were sufficient to permit the admission of the evidence over a hearsay objection. The proponent of a writing at trial must overcome authentication, best evidence, *and* hearsay objections, however. The fact that a document may be self-authenticating does not render it admissible if it is hearsay in the absence of a recognized exception to the rule against hearsay. *See generally United States v. Chu Kong Yin*, 935 F.2d 990, 994–1000 (9th Cir.1991) (discussing separate authentication and hearsay objections to admission of foreign public documents).

While many cases have considered challenges to the *sufficiency* of a FDIC certificate of insurance to establish a bank's federally-insured status, *see United States v. Maner*, 611 F.2d 107, 111 n. 1 (5th Cir.1980) (collecting cases), very few have considered its *admissibility*. Indeed, several cases have considered the converse claim: whether the evidence is sufficient in the absence of the certificate, which is considered the best evidence of the fact to be proved. *E.g., United States v. Phillips*, 606 F.2d 884, 887 (9th Cir.1979), cert. denied, 444 U.S. 1024, 100 S.Ct. 685, 62 L.Ed.2d 657 (1980); *United States v. Murrah*, 478 F.2d 762, 763–64 (5th Cir.1973). This circuit has repeatedly held a certificate of insurance, or testimony by a bank agent regarding the existence of a certificate, to be sufficient evidence, without ever questioning its admissibility. *United States v. Corbin*, 972 F.2d 271, 272 (9th Cir. 1992) (per curiam); *United States v. Campbell*, 616 F.2d 1151, 1153 (9th Cir.), cert. denied, 447 U.S. 910, 100 S.Ct. 2998, 64 L.Ed.2d 861 (1980); *Phillips*, 606 F.2d at 887;[2] *United States v. Jackson*, 430 F.2d 1113, 1115–16 (9th Cir.1970); *United States v. Phillips*, 427 F.2d 1035, 1037 (9th Cir.), cert. denied, 400 U.S. 867, 91 S.Ct. 108, 27 L.Ed.2d 106 (1970).

■ Two immediate explanations for this omission come to mind: such a challenge has

---

1. Bellucci also argues that the bank officer's testimony regarding the certificate was inadmissible hearsay. Because we conclude the certificate itself was both admissible and sufficient to establish the federally insured status of the bank, we need not address this claim.

2. In *Phillips*, the Court held that the uncontradicted testimony of a bank employee as to the insured status of the bank was properly admitted over hearsay and best evidence objections. 606 F.2d at 887. The certificate of insurance itself was not introduced at trial.

never been seriously raised because the certificate is (1) obviously not hearsay, or (2) plainly falls within a recognized hearsay exception. While this circuit has never ruled on either issue, the conspicuous lack of discussion in the cases recommends the first explanation. A certificate of insurance is issued by the FDIC upon approval of a bank's application to become a member. Like a written contract that memorializes the fact of a legal agreement, the certificate memorializes the fact of the legal relationship of insurer and insured. Such a written statement, which itself "affects the legal rights of the parties or is a circumstance bearing on conduct affecting their rights," falls outside the definition of hearsay. Fed.R.Evid. 801(c) adv. com. note, *reprinted in* 56 F.R.D. 183, 293 (1972).

■ Because the certificate of insurance is not hearsay, no special showing is required under the Confrontation Clause before it may be admitted in place of testimony by a representative from the FDIC. *Cf. United States v. Ordonez*, 737 F.2d 793, 803 (9th Cir.1984) (statement admissible under hearsay exception may still violate Confrontation Clause) *and United States v. Wilmer*, 799 F.2d 495, 501 (9th Cir.1986) (same), *cert. denied*, 481 U.S. 1004, 107 S.Ct. 1626, 95 L.Ed.2d 200 (1987), *with U.S. v. Bland*, 961 F.2d 123, 127 n. 3 (9th Cir.1992) (statement fitting within recognized exception complies with Confrontation Clause).

In support of his Confrontation Clause argument, Appellant offers no basis other than his hearsay argument to require live witnesses in place of the written records. The evidence of the bank's insured status was uncontradicted, and Appellant offers no hint that cross-examination of the absent witnesses might have shown otherwise. Indeed, Appellant deliberately passed up his opportunity to cross-examine Mr. James, a witness he might truly have been able to discredit because of James' lack of personal knowledge regarding the insurance transactions, choosing instead to stipulate to James' testimony. Nor does Appellant argue that the evidence admitted was inaccurate or misleading in any

respect; Appellant does not contend that the bank was not federally insured.

**AFFIRMED.**