**Alan STUART; G. Raleigh Hanbury, Plaintiffs–Appellees,**

v.

**UNUM LIFE INSURANCE COMPANY OF AMERICA, Defendant–Appellant,**

and

**Desert Hospital, Defendant.**

No. 97–55659, 97–55967

United States Court of Appeals, Ninth Circuit.

Submitted May 7, 1999[1]

Filed July 10, 2000

---

**1.** The panel unanimously finds this case suitable for decision without oral argument. *See* Fed. R.App. P. 34(a)(2).

Lesley C. Green, Gary J. Goodstein, Bannan, Green, Smith, Frank & Rimac LLP, Los Angeles, California, for the defendant-appellant.

Nicholas G. Spirtos, Palm Desert, California, for the plaintiffs-appellees.

Before: BRUNETTI, WARDLAW, and FLETCHER, Circuit Judges.

BRUNETTI, Circuit Judge.

## I.

Alan Stuart and G. Raleigh Hanbury ("Stuart") filed this lawsuit in the Superior Court of California against UNUM Life Insurance Company of America ("UNUM") and Desert Hospital, Stuart's employer, alleging breach of insurance contract, tortious breach of insurance contract, and loss of consortium. UNUM and Desert Hospital collectively removed the action to the United States District Court for the Central District of California pursuant to 28 U.S.C. §§ 1331 and 1441. The district court, after finding federal subject matter jurisdiction lacking, remanded the case back to state court and awarded Stuart costs and actual expenses, including attorneys' fees, incurred as a result of the defendants' removal pursuant to 28 U.S.C. § 1447(c). UNUM appeals from the district court's order awarding Stuart costs and actual expenses. We have jurisdiction under 28 U.S.C. § 1291 and reverse.

## II.

UNUM issued a group long term disability insurance policy (the "Policy") to Desert Hospital which, in turn, made the Policy available to its employees through a group insurance plan (the "Plan"). Stuart, a Desert Hospital employee, elected to participate in the Plan which entitled him to benefits under the Policy if he subsequently became disabled by a covered disability. Stuart claims that he is entitled to benefits under the Policy because he became disabled in August 1994.

Stuart submitted his claim for long-term disability benefits to UNUM in December 1994. UNUM investigated Stuart's claim for benefits and denied the claim in December 1995 because, according to UNUM, the Policy's "pre-existing conditions" provision precluded coverage in favor of Stuart. Stuart commenced this action against UNUM and Desert Hospital in the Superior Court of California alleging breach of insurance contract, tortious breach of contract, and loss of consortium after UNUM denied his claim for benefits.

Pursuant to 28 U.S.C. §§ 1331 and 1441, UNUM and Desert Hospital removed the lawsuit to the United States District Court for the Central District of California and immediately moved to dismiss Stuart's state law claims. Desert Hospital argued in its motion to dismiss that Stuart could not state a breach of insurance contract claim against his employer and that the loss of consortium claim was untenable because Stuart and Hanbury were not legally married. UNUM argued in its motion to dismiss that the Policy was an "employee welfare benefit plan" under ERISA, 29 U.S.C. § 1001, *et. seq.*, and that ERISA preempted all of Stuart's state law claims.

After it took Desert Hospital's and UNUM's motions to dismiss under submission, the district court issued an Order to Show Cause why (1) the case should not be remanded to state court for lack of federal subject matter jurisdiction; and (2) UNUM and Desert Hospital should not be required to pay Stuart's costs and actual expenses, including attorneys' fees, incurred as a result of the removal. In response to the district court's Order to Show Cause, UNUM submitted the Policy and the declaration of Henry T. Hudson, Desert Hospital's Vice President of Corporate Services, to demonstrate that Desert Hospital contributed to the Plan, that the Policy was an "employee welfare benefit plan" subject to ERISA, and that removal to the district court was proper.

The district court rejected UNUM's offer of proof and remanded the lawsuit to state court. The district court concluded that UNUM had failed to meet its burden of proving that the Plan was subject to ERISA and that removal was proper because both the Policy and the declaration of Henry T. Hudson were inadmissible by finding that the Policy was inadmissible hearsay and the declaration of Henry T.

Hudson was not sufficiently based on personal knowledge. After it remanded the lawsuit to state court, the district court then awarded Stuart "a total of $2,540.15 as just costs and actual expenses, including attorney's fees, incurred as a result of the removal, against defendants UNUM and Desert" pursuant to 28 U.S.C. § 1447(c).

### III.

We review the district court's award of attorneys' fees pursuant to 28 U.S.C. § 1447(c) for an abuse of discretion. *See, Rutledge v. Seyfarth, Shaw, Fairweather & Geraldson,* 201 F.3d 1212, 1215 (9th Cir.), amended by 208 F.3d 1170 (9th Cir.2000); *Moore v. Permanente Med. Group, Inc.,* 981 F.2d 443, 447 (9th Cir. 1992). Although we are statutorily barred from reviewing the district court's remand order, *see* 28 U.S.C. § 1447(d), we must examine the objective merits of the underlying remand order to determine whether the district court abused its discretion when it awarded Stuart costs and actual expenses. *See Moore,* 981 F.2d at 447. The district court necessarily abused its discretion when it awarded Stuart costs and actual expenses because its finding of a lack of jurisdiction and remand order were based on an erroneous view of the law and a clearly erroneous assessment of the evidence. *See id.* (citing *Cooter & Gell v. Hartmarx Corp.,* 496 U.S. 384, 405, 110 S.Ct. 2447, 110 L.Ed.2d 359 (1990)). We reverse the district court's order awarding Stuart costs and attorney's fees.

### IV.

Whether the district court abused its discretion when it awarded Stuart costs and actual expenses turns on whether Desert Hospital's involvement in the Plan is sufficient to create an employee welfare benefit plan under ERISA because, if its involvement is sufficient to create a plan subject to ERISA, removal to the district court was proper.[2] *See Emard v. Hughes*

---

**2.** The parties do not dispute that if we find that the Plan is an ERISA plan, "(1) ERISA preempts the plaintiff's cause of action and (2) the cause of action falls within the scope

of [ERISA's civil enforcement provision,] 29 U.S.C. § 1132(a)." *Rutledge,* 201 F.3d at 1216 (9th Cir.2000) (outlining the requirements for complete preemption under ERISA)

*Aircraft Co.,* 153 F.3d 949, 953 (9th Cir. 1998); *Harris v. Provident Life and Accident Ins. Co.,* 26 F.3d 930, 934 (9th Cir. 1994). "ERISA defines an 'employee benefit plan' to include, among others, 'any plan, fund, or program ... established or maintained by an employer ... for the purpose of providing for its participants or their beneficiaries, through the purchase of insurance ... medical, surgical, or hospital care or benefits....'" *Qualls ex rel. Qualls v. Blue Cross of California, Inc.,* 22 F.3d 839, 843 (9th Cir.1994) (ellipses in original) (quoting 29 U.S.C. §§ 1002(1), (3)). "The existence of an ERISA plan is a question of fact, to be answered in the light of all the surrounding circumstances from the point of view of a reasonable person." *Zavora v. Paul Revere Life Ins. Co.,* 145 F.3d 1118, 1120 (9th Cir.1998) (quoting *Credit Managers Ass'n v. Kennesaw Life & Accident Ins. Co.,* 809 F.2d 617, 625 (9th Cir.1987)).

■ The Secretary of Labor has, however, issued a regulation creating a "safe harbor" from ERISA coverage. *See* 29 C.F.R. § 2510.3–1(j). A group insurance plan offered to employees is within the safe harbor regulation established by the Secretary of Labor and is exempt from ERISA coverage when:

(1) No contributions are made by an employer or employee organization;

(2) Participation in the program is completely voluntary for employees or members;

(3) The sole functions of the employer or employee organization with respect to the program are, without endorsing the program, to permit the insurer to publicize the program to employees or members, to collect premiums through payroll deductions or dues checkoffs and to remit them to the insurer; and

(4) The employer or employee organization receives no consideration in the form of cash or otherwise in connection with the program, other than reasonable compensation, excluding any profit, for administrative services actually rendered in connection with payroll deductions or dues checkoffs.

*Id.; see also Qualls,* 22 F.3d at 843. It is well settled that when an employer provides a group insurance plan to its employees and satisfies all four requirements of the safe harbor regulation, the employer's mere purchase of insurance does not, in and of itself, create an employee welfare benefit plan under ERISA. *See Kanne v. Connecticut General Life Ins. Co.,* 867 F.2d 489, 492 (9th Cir.1988) (citing *Donovan v. Dillingham,* 688 F.2d 1367, 1375 (11th Cir.1982) (en banc)). Some tension may exist in our decisions, however, as to whether an employer's failure to satisfy one of the four requirements of the safe harbor regulation is conclusive to determining whether a group insurance plan is an employee welfare benefit plan subject to ERISA coverage. We, therefore, begin our analysis by reviewing our case law on this issue.

**A.**

We first analyzed the Secretary of Labor's safe harbor regulation and the issue of ERISA preemption in *Kanne v. Connecticut General Life Ins. Co.,* 867 F.2d 489 (9th Cir.1988). In *Kanne,* the insured prevailed against its insurer at trial on three state law causes of action and was awarded damages. *See id.* at 491. The issue of whether the insured's state law causes of action were preempted by ERISA became determinative as to whether the jury's verdict in favor of the insured could stand; therefore, we first had to determine whether the insured's policy was governed by ERISA. *See id.* at 492. We noted that it appeared as though the first, second, and third requirements of the safe harbor regulation were satisfied because the evidence was unclear as to whether the employer ever contributed to

(alternation in original) (quoting *Emard v. Hughes Aircraft Co.,* 153 F.3d 949, 953 (9th Cir.1998)*, cert. denied,* 525 U.S. 1122, 119 S.Ct. 903, 142 L.Ed.2d 902 (1999)) (internal quotation marks omitted).

the plan or whether the insured's participation in the program was completely voluntary, and no evidence indicated that the plan was administered by the employer for profit. *See id.* Nonetheless, we concluded that the plan was an employee welfare benefit plan subject to ERISA because the employer, as the plan administrator, endorsed the group insurance plan within the meaning of the third requirement of the safe harbor regulation. *See id.* at 493. We stated that "[b]ecause [the employer] is more than a mere advertiser of group insurance, there need not be employer contributions or automatic employee coverage to bring the plan within ERISA." *Id.* (citing *Credit Managers Ass'n v. Kennesaw Life & Accident Ins. Co.,* 809 F.2d 617, 625 (9th Cir.1987)). We recognized in *Kanne,* without expressly stating, that an employer's failure to satisfy one of the safe harbor's four requirements conclusively demonstrates that an otherwise qualified group insurance plan is an employee welfare benefit plan subject to ERISA.

We returned to the interplay between ERISA preemption and the safe harbor regulation in *Silvera v. Mutual Life Insurance Co. of New York,* 884 F.2d 423 (9th Cir.1989). In *Silvera,* the insured filed a complaint in state court alleging various state law causes of action against its insurer. *See id.* at 424. The insurer removed the action to federal court contending that the insurance plan was subject to ERISA coverage and that federal subject matter jurisdiction therefore existed under 28 U.S.C. § 1331. *See id.* The district court dismissed the insured's state law claims against the insurer, concluding that ERISA preempted the insured's state law claims. *See id.* Reviewing the district court's decision, we first analyzed the safe harbor regulation to determine whether the insured's employer had established or maintained an employee welfare benefit plan under ERISA and stated that "behavior inconsistent with one of the [safe harbor's] criteria would constitute evidence of

the establishment of a[n ERISA] plan." *Id.* at 426 (citing *Kanne,* 867 F.2d at 492). After recognizing that the employer endorsed and paid premiums for the plan and that the plan was not completely voluntary, however, we concluded (consistent with *Kanne* ) that "a straightforward application of 29 C.F.R. § 2510.3–1(j) [the safe harbor regulation] ... *forces* the conclusion that [the employer] did in fact 'establish or maintain' an employee welfare benefit plan" under ERISA.[3] *Id.* (emphasis added).

In *Qualls ex rel. Qualls v. Blue Cross of California, Inc.,* 22 F.3d 839 (9th Cir. 1994), we again examined ERISA preemption and the safe harbor regulation and explicitly held for the first time that an employer's failure to satisfy one of the safe harbor's four requirements conclusively demonstrates that an otherwise qualified group insurance plan is an employee welfare benefit plan subject to ERISA. The insured in *Qualls* filed various state law claims against its insurer after the insured settled an injury claim with a third party and the insurer refused to pay benefits. *See id.* at 841–42. The district court granted the insurer summary judgment, concluding that the insured's state law claims were preempted by ERISA. *See id.* at 842. To determine whether the plan at issue was an ERISA plan, we outlined the safe harbor regulation and stated that "[u]nless *all four* of the ... requirements are met, the employer's involvement in a group insurance plan is significant enough to constitute an 'employee benefit plan' subject to ERISA." *Id.* at 843 (emphasis in original) (citing *Kanne,* 867 F.2d at 492). We then concluded that the group insurance plan was subject to ERISA and that the insured's state law claims were preempted because the employer contributed to the plan and employee participation in the plan was not completely voluntary. We explicitly recognized, consistent with *Kanne* and *Silvera,* that an

---

**3.** Although the employer in *Silvera* established an employee welfare benefit plan under ERISA, the plan was actually exempt from ERISA coverage because the plan qualified as a governmental plan under 29 U.S.C. § 1002(32). *Silvera,* 884 F.2d at 426.

employer's failure to satisfy the safe harbor regulation necessarily means that the employer's involvement in a group insurance plan is significant enough to transform the common group insurance plan into an employee welfare benefit plan subject to ERISA coverage if the plan is otherwise qualified. *See id.* at 843–44.

We affirmed *Qualls* 's reading of *Kanne* and *Silvera* in *Pacificare Inc. v. Martin,* 34 F.3d 834 (9th Cir.1994). In *Pacificare,* the insurer filed suit against an insured party seeking reimbursement after the insured had settled claims against the third party responsible for the insured's injuries. *See id.* at 835. We were confronted with the issue of whether the insurer could state a cause of action for equitable relief under ERISA pursuant to 29 U.S.C. § 1132(a)(3). *See id.* at 837. To answer that question, we first had to determine whether the insurance contract between the insured and the insurer was an ERISA plan. *See id.* We concluded that the insurance contract was an ERISA plan because the plan failed to satisfy two requirements of the safe harbor regulation in that the insured's employer contributed to the plan and endorsed the plan. *See id.* (citing *Kanne,* 867 F.2d at 493; *Silvera,* 884 F.2d at 426). We again stated with specificity that an otherwise qualified plan which fails to satisfy all four requirements of the safe harbor regulation "cannot be excluded from ERISA coverage." *Id.* (citing *Kanne,* 867 F.2d at 492).

In *Crull v. Gem Ins. Co.,* 58 F.3d 1386 (9th Cir.1995), we appeared to retreat from our prior holdings that an employer must satisfy all four requirements of the safe harbor regulation for a group insurance plan to be excluded from ERISA coverage. In *Crull,* the insured filed state law claims against its insurer in state court after the insurer denied coverage and rescinded the insured's policy. *See id.* at 1388. The insurer removed the lawsuit to federal court and moved for summary judgment, arguing that the insured's state law claims were preempted by ERISA. *See id.* at 1389. The district court granted the insurer summary judgment, concluding that the insurance plan was an employee welfare benefit plan subject to ERISA and that ERISA preempted all of the insured's state law claims. *See id.*

To review the district court's summary judgment order, we had to determine, once again, whether the insured's insurance policy was part of an employee welfare benefit plan under ERISA. *See id.* After outlining the requirements of the safe harbor regulation, we stated that "[b]ehavior inconsistent with one of the above criteria would constitute evidence of the establishment of a plan." *Id.* at 1390 n. 2 (quoting *Silvera,* 884 F.2d at 426) (internal quotation marks omitted). Although we did not state that the failure to satisfy the safe harbor regulation was conclusive to determining whether the group insurance plan was subject to ERISA, we nonetheless concluded that the district court did not err when it ruled on summary judgment that the plan was an employee welfare benefit plan under ERISA because the insured's employer contributed to and endorsed the plan. *See id.* at 1390. We reasoned that under the standards established by Ninth Circuit precedent, the undisputed actions of the insured's employer were sufficient to show the establishment of an employee welfare benefit plan subject to ERISA coverage. *See id.* Although we were not as explicit in *Crull* as we were in *Qualls* and *Pacificare, Crull* is consistent with *Qualls* and *Pacificare* in that an employer must satisfy all four requirements of the safe harbor regulation for its group insurance plan to be excluded from ERISA coverage.

Relying on *Kanne* and *Qualls,* we concluded in *Sarraf v. Standard Ins. Co.,* 102 F.3d 991, 993 (9th Cir.1996), that an employer's failure to satisfy the third requirement of the safe harbor regulation conclusively demonstrated that the group insurance plan at issue could not be excluded from ERISA coverage. *Sarraf* confirmed our express statement in *Qualls* and reasoning in *Kanne* that an employer's failure to satisfy just one requirement

of the safe harbor regulation conclusively demonstrates that an otherwise qualified group insurance plan is an employee welfare benefit plan under ERISA. *See id.*

In *Steen v. John Hancock Mut. Life Ins. Co.,* 106 F.3d 904, 916 (9th Cir.1997), we had to determine whether the trustees of an employers association had standing to sue the insurance company from which the employers association purchased insurance for engaging in transactions prohibited by ERISA under 29 U.S.C. § 1106. We had to determine, *inter alia,* whether the insurance plan the employers association purchased from the insurer was an employee welfare benefit plan under ERISA. *See id.* at 917. Relying exclusively on *Kanne* (i.e., without citing *Qualls* or *Pacificare* ), we stated that the insurance plan could not be excluded from ERISA coverage if one of the four requirements of the safe harbor regulation was not satisfied, and concluded that the group insurance plan was an ERISA plan because the employers who belonged to the employers association contributed to the plan and because the employers association promoted the plan (first and third requirements of the safe harbor regulation). *See id. Steen* again confirms the express statements of *Qualls* and *Pacificare,* that an otherwise qualified group insurance plan must satisfy all four requirements of the safe harbor provision to be excluded from ERISA coverage.

Our most recent adventure in the ERISA preemption arena occurred in *Zavora v. Paul Revere Life Ins. Co.,* 145 F.3d 1118 (9th Cir.1998). In *Zavora,* the insured sued his insurer in state court alleging various state law causes of action after his claim for benefits was denied. *See id.* at 1120. The insurer removed the action to federal court and the district court granted the insurer summary judgment on the insured's state law claims, concluding that the insured's state law claims were preempted by ERISA. *See id.* On appeal, we reversed the district court's summary judgment order because the insured raised a triable issue of fact as to whether the insurance policy was an employee welfare benefit plan subject to ERISA coverage. *See id.*

The parties in *Zavora* agreed that the employer had satisfied the first, second, and fourth requirements of the safe harbor regulation, but contested whether the employer had satisfied the third requirement (i.e., whether the employer had endorsed the insurance plan). *See id.* at 1121. Relying on *Kanne,* the insurer argued that the employer endorsed the plan and failed to satisfy the third requirement of the safe harbor regulation as a matter of law because the employer was the plan administrator. *See id.* The insured argued that the employer had satisfied the third requirement because the employer was the plan administrator in name only and submitted an affidavit from the employer that stated the employer had not engaged in any administrative activities beyond those specified in the safe harbor regulation. *See id.* After reviewing the evidence presented by both parties, we concluded that a reasonable person could find that the employer satisfied the third requirement of the safe harbor regulation and that the policy was excluded from ERISA coverage and, accordingly, reversed the district court's summary judgment order. *See id.* at 1122. We held that the employer could be the plan administrator in name only without endorsing the plan in contravention of the safe harbor's third requirement stating that the mere fact that the employer had "failed in *one particular* to limit itself to the activities specified in *a subsection* of the 'safe harbor' regulation is not conclusive; it is evidence of the establishment of a plan." *Id.* at 1121 (quotations omitted) (emphasis added).

Although it may appear as though this statement conflicts with *Qualls, Pacificare, Steen, Sarraf,* and *Kanne,* this statement creates no conflict when it is read carefully in the context of the *Zavora* case. *Zavora* merely recognized that the employer's failure to limit itself to the activities explicitly outlined in the third requirement of the safe harbor regulation (i.e., being named

the plan administrator) was not conclusive to determining whether an ERISA plan was established because the evidence presented by the insured still allowed a reasonable person to conclude that the employer satisfied the third requirement of the safe harbor regulation. *Zavora* instructs that an employer can be a plan administrator in name only and still satisfy the four requirements of the safe harbor regulation, even though being a plan administrator is not listed in the safe harbor's third requirement.[4]

■ Thus, detailed review of our prior opinions demonstrates that we have uniformly adopted the position that a group insurance plan cannot be excluded from ERISA coverage when an employer fails to satisfy any one of the four requirements of the safe harbor regulation. *See Steen,* 106 F.3d at 917; *Sarraf,* 102 F.3d at 993; *Crull,* 58 F.3d at 1390; *Pacificare,* 34 F.3d at 837; *Qualls,* 22 F.3d at 844; *Silvera,* 884 F.2d at 426; *Kanne,* 867 F.2d at 492.

Other circuit courts agree with our conclusion and have consistently held that employers must satisfy all four requirements of the safe harbor regulation for otherwise qualified group insurance plans to be exempt from ERISA coverage. *See, e.g., Gaylor v. John Hancock Mut. Life Ins. Co.,* 112 F.3d 460, 463 (10th Cir.1997); *Thompson v. American Home Assur. Co.,* 95 F.3d 429, 435 (6th Cir.1996); *Johnson v. Watts Regulator Co.,* 63 F.3d 1129, 1133 (1st Cir.1995); *Grimo v. Blue Cross/Blue Shield of Vermont,* 34 F.3d 148, 152 (2d Cir.1994); *Hansen v. Continental Ins. Co.,* 940 F.2d 971, 977 (5th Cir.1991). The First Circuit even cited to our opinions in *Qualls* and *Kanne* when it stated that the *"[f]ailure to fulfill any one of the four*

*criteria listed in the regulation ... closes the safe harbor and exposes a group insurance program, if it otherwise qualifies as an ERISA program, to the strictures of the Act." Johnson,* 63 F.3d at 1133 (emphasis added).

### B.

■ Having reviewed the applicable law, we now turn to the case before us. There is no doubt that the long term group insurance policy UNUM issued to Desert Hospital, Stuart's employer, created a "plan" under ERISA, *see Qualls,* 22 F.3d at 843 (citing *Fort Halifax Packing Co. v. Coyne,* 482 U.S. 1, 10–15, 107 S.Ct. 2211, 96 L.Ed.2d 1 (1987)), and that the Plan is subject to the strictures of ERISA if Desert Hospital, the employer, has failed to satisfy any one of the four requirements of the safe harbor regulation. Once the district court issued UNUM the order to show cause why this case should not be remanded to state court for lack of federal subject matter jurisdiction, UNUM only had to prove that Desert Hospital failed to satisfy one of the four requirements of the safe harbor regulation to demonstrate that the plan was an employee welfare benefit plan under ERISA and that removal to the district court was proper.

UNUM produced the Policy and the declaration of Henry T. Hudson ("Hudson"), Desert Hospital's Vice President of Corporate Services, to prove that the Plan did not satisfy the first requirement of the safe harbor regulation because Desert Hospital contributed to the Plan, that the Plan was therefore an employee welfare benefit plan subject to ERISA, and that removal to the district court was proper.

---

4. "A program that satisfies the [safe harbor] regulation's standards will be deemed not to have been "established or maintained" by the employer. The converse, however, is not necessarily true; a program that fails to satisfy the regulation's standards is not automatically deemed to have been "established or maintained" by the employer, but, rather, is subject to further evaluation under the conventional tests."

*Johnson v. Watts Regulator Co.,* 63 F.3d 1129, 1133 (1st Cir.1995) (citing *Hansen v. Continental Ins. Co.,* 940 F.2d 971, 976 (5th Cir. 1991)); *see also Gaylor v. John Hancock Mutual Life Ins. Co.,* 112 F.3d 460, 463 (10th Cir.1997) ("[T]he fact that [a] plan is not excluded from ERISA coverage by this regulation does not compel the conclusion that the plan is an ERISA plan.") (citations omitted).

The district court concluded that the Policy and the declaration of Hudson were insufficient to prove that Desert Hospital contributed to the policy stating that the "defendants have not carried their burden of showing by a preponderance of the evidence that Desert [Hospital failed to meet] criterion one by contributing to the plan, thereby making it an ERISA plan, and the proper subject of removal." The district court remanded the case to state court and awarded Stuart costs and actual expenses, including attorneys' fees, pursuant to 28 U.S.C. § 1447(c).

### 1.

■ The district court erred when it concluded that the Policy was inadmissible hearsay. Hearsay is an out-of-court statement introduced to prove the truth of the matter asserted. *See* Fed.R.Evid. 801(c). If, however, an out-of-court statement's significance

lies solely in the fact that it was made, no issue is raised as to the truth of anything asserted, and the statement is not hearsay.... *The effect is to exclude from hearsay the entire category of "verbal acts" and "verbal parts of an act," in which the statement itself affects the legal rights of the parities or is a circumstance bearing on conduct affecting their rights.*

*Id.*, advisory committee's note (emphasis added). The Policy is, therefore, excluded from the definition of hearsay and is admissible evidence because it is a legally operative document that defines the rights and liabilities of the parties in this case. *See United States v. Bellucci*, 995 F.2d 157, 161 (9th Cir.1993); *United States v. Rubier*, 651 F.2d 628, 630 (9th Cir.1981).

In *Bellucci*, a criminal defendant argued that the government could not sufficiently prove that a financial institution was federally insured by simply introducing the institution's certificate of insurance. *See id.* at 160. We concluded that the certificate of insurance was not inadmissible hearsay because the certificate memorialized the legal relationship between the insurer-the FDIC-and the insured-the financial institu-

tion-and fell outside of the definition of hearsay. *See id.* at 161. We also noted that the certificate of insurance was sufficient, in and of itself, to prove that the financial institution was federally insured because the certificate of insurance was the best evidence of the financial institution's federally insured status. *See id.* at 160. Just as the certificate of insurance in *Bellucci* was admissible and sufficient to prove the financial institution's federally insured status, the Policy in this case is admissible and sufficient to prove that Desert Hospital had an obligation to contribute to the Plan. The Policy affects the legal rights of Stuart, UNUM, and Desert Hospital and provides the best evidence of Desert Hospital's specific role in administering the Plan.

The policy also tended to prove that Desert Hospital and UNUM intended to create an ERISA plan because the Policy specifically refers to ERISA. *See Zavora*, 145 F.3d at 1121 (citing *Kanne*, 867 F.2d at 489). Accordingly, when UNUM introduced the Policy, UNUM produced uncontroverted evidence that Desert Hospital had a legal obligation to contribute to the Plan, that the Plan was an employee welfare benefit plan subject to ERISA, and that removal to the district court was proper.

### 2.

■ The district court also erroneously excluded the declaration of Hudson because the district court's conclusion that Hudson lacked personal knowledge is belied by the record. Rule 602 of the Federal Rules of Evidence states in relevant part that "[a] witness may not testify to a matter unless evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter." Fed.R.Evid. 602. Sufficient evidence was introduced to support a finding that Hudson has personal knowledge to testify as to whether Desert Hospital contributes to the Plan. The record reveals that Hudson is currently Desert Hospital's Vice President

of Corporate Services and that he personally signed Desert Hospital's application for the Policy in his former capacity as the hospital's Director of Human Resources. Hudson also specifically stated that he had personal knowledge that Desert Hospital paid a portion of the premiums for the Policy directly and that his personal knowledge was based *only in part* on his review of the Policy. In light of these facts, we conclude that the district court's disregard of Hudson's declaration based on a perceived lack of personal knowledge was a clearly erroneous assessment of the evidence.

Our conclusion that Hudson's declaration was sufficiently based on personal knowledge is mandated by our prior decision in *United States v. Thompson,* 559 F.2d 552 (9th Cir.1977). In *Thompson,* we concluded that a witness had ample personal knowledge to testify about a restaurant's normal procedures for issuing receipts to customers because the witness was the manager of the restaurant. *See id.* at 553–54. If the manager of a restaurant has ample personal knowledge to testify about the procedures of a restaurant simply because he is the manager, Hudson, Desert Hospital's Vice President of Corporate Services and former Director of Human Resources, clearly has ample personal knowledge to testify that Desert Hospital contributes directly to its employee insurance plan. Accordingly, when UNUM produced Hudson's declaration, UNUM produced further uncontroverted evidence that the plan did not satisfy the safe harbor regulation, that the plan was an employee welfare benefit plan subject to ERISA, and that removal to the district court was proper. *See Sarraf,* 102 F.3d at 993; *Crull,* 58 F.3d at 1390; *Qualls,* 22 F.3d at 844; *Silvera,* 884 F.2d at 423; *Kanne,* 867 F.2d at 492.

## V.

■ UNUM demonstrated that Desert Hospital contributed to the disability plan, that the plan was an employee benefit plan subject to ERISA, and that removal to the district court was proper. Because remov-

al to the district court was proper, the district court's remand order was founded on an erroneous view and application of the law and the district court necessarily abused its discretion when it awarded Stuart costs and actual expenses pursuant to 28 U.S.C. § 1447(c). *See Moore,* 981 F.2d at 447.

**REVERSED.**