**NEUTRINO DEVELOPMENT CORPORATION,**
Plaintiff,

v.

**SONOSITE, INC., Defendant.**

**No. CIV.A.H–01–2484.**

United States District Court,
S.D. Texas,
Houston Division.

Sept. 30, 2004.

See also 2004 WL 2212046.

William C. Norvell, Jr., Scott Dion Marrs, Beirne Maynard and Parsons, Richard Theodore Redano, Duane Morris et al., John Timothy Headley, Gardere Wynne et al., Houston, TX, for Plaintiff.

Thomas W. Paterson, Susman Godfrey, Houston, TX, for Defendant.

---

## MEMORANDUM AND ORDER

RAINEY, District Judge.

Pending before the Court is Defendant's Post–Markman Motion for Summary Judgment based on Invalidity (Dkt.# 131). The Court, after reviewing the motion, the responses of the parties and the relevant law, is of the opinion that the motion should be DENIED.

### Factual and Procedural Background

This is an action for patent infringement brought by Neutrino Development Corporation ("Neutrino") against Sonosite, Inc. ("Sonosite"). Neutrino is the owner of United States Patent No. 6,221,021 ("the '021 patent"). Neutrino alleges that four devices manufactured and marketed by Sonosite, the Sonosite 180, SonoHeart, Sonosite 180 PLUS, and the SonoHeart PLUS, infringe on the '021 patent.

Richard T. Redano applied for a patent on the device in question on September 9, 1997. (Application Serial No. 08/926, 209).[1] The '021 patent, entitled "Method and Apparatus for Penile Hemodynamic Stimulation, Monitoring, and Drug Delivery Acceleration," resulted from that application. It describes a device for "stimulating and/or monitoring hemodynamic activity, such as blood flow, in a penis." *U.S. Patent No. 6,221,021* at col. 1, ll. 15–16.

Defendant Sonosite began as a division of ATL Ultrasound, Inc., and was spun off as a public company in April 1998. Sonosite unveiled its first public product in the realm of hand-carried ultrasound devices, the Sonosite 180, on May 17, 1999. Sonosite began selling the device in June 1999. In January 2000, Sonosite launched its second product, the SonoHeart. In April 2001, Sonosite launched a new generation

---

1. On May 20, 1999, Redano field a continuation in patent application, serial No. 09/315,-867 which eventually issued as the '021 patent. In May 2000, Redano amended the pending '021 Patent Application to broaden its disclosure and expand the claims. The '021 patent was issued on April 24, 2001.

of these two devices with its introduction of the SonoSite 180 PLUS and the SonoHeart PLUS.

On July 24, 2001, Neutrino filed this action, alleging that Sonosite had illegally used Redano's invention and infringed the '021 patent. Sonosite answered the complaint on August 14, 2001, asserting that the '021 patent claims are not infringed and are invalid, and counterclaimed for declaratory judgment of non-infringement and invalidity.

On February 20, 2002, after extensive briefing, the Court held a one-day *Markman* hearing on claim construction. On October 9, 2002, the Court stayed all proceedings pending the Court's *Markman* and summary judgment rulings. The Court issued its claim construction on August 21, 2003. This motion for summary judgment was filed as a result of the Court's claim construction.

### Summary Judgment Standard

Summary judgment is proper if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c); *see also Christopher Village, LP v. Retsinas,* 190 F.3d 310, 314 (5th Cir. 1999). "For any matter on which the non-movant would bear the burden of proof at trial . . ., the movant may merely point to the absence of evidence and thereby shift to the non-movant the burden of demonstrating by competent summary judgment proof that there is an issue of material fact warranting trial." *Transamerica Ins. Co. v. Avenell,* 66 F.3d 715, 718–19 (5th Cir. 1995); *see also Celotex Corp. v. Catrett,* 477 U.S. 317, 323–25, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). To prevent summary judgment, the non-movant must "respond by setting forth specific facts" that indicate a genuine issue of material fact. *Rushing*

*v. Kansas City S. Ry. Co.,* 185 F.3d 496, 505 (5th Cir.1999).

When considering a motion for summary judgment, the Court must view the evidence in the light most favorable to the non-movant and draw all reasonable inferences in favor of the non-movant. *See Samuel v. Holmes,* 138 F.3d 173, 176 (5th Cir.1998); *Texas v. Thompson,* 70 F.3d 390, 392 (5th Cir.1995). "The court may not undertake to evaluate the credibility of the witnesses, weigh the evidence, or resolve factual disputes; so long as the evidence in the record is such that a reasonable jury drawing all inferences in favor of the nonmoving party could arrive at a verdict in that party's favor, the court must deny the motion." *Int'l Shortstop, Inc. v. Rally's, Inc.,* 939 F.2d 1257, 1263 (5th Cir.1991). However, the non-movant cannot avoid summary judgment by presenting only "conclusory allegations," or "unsubstantiated assertions," such as the bare allegations of a complaint, but must present sufficient evidence, such as sworn testimony in a deposition or affidavit, to create a genuine issue of material fact as to the claim asserted. *Little v. Liquid Air Corp.,* 37 F.3d 1069, 1075 (5th Cir.1994) (en banc).

Patent cases are amenable to summary judgment as any other case when no genuine issue of material fact exists and the movant is entitled to judgment as a matter of law. *See Warner–Jenkinson Co. v. Hilton Davis Chem. Co.,* 520 U.S. 17, 39, 117 S.Ct. 1040, 137 L.Ed.2d 146 (1997); *Johnston v. IVAC Corp.,* 885 F.2d 1574, 1576–77 (Fed.Cir.1989); *SRI Int'l v. Matsushita Elec. Corp. of Am.,* 775 F.2d 1107, 1116 (Fed.Cir.1985).

### Analysis

Defendant challenges the validity of the '021 patent by asserting that the invention was on sale in the country more than one year prior to the date of the patent

and thus the patent is invalid because it violates the on-sale bar of 35 U.S.C. § 102(b). Additionally, Defendant challenges the validity of the patent by asserting that the claims of the patent read on a prior art product, a Diasonics Ultrasound Model Inpact VFI, also known as the Compact System ("Compact System"), and is thus anticipated under 35 U.S.C. § 102(b).

Under 35 U.S.C. § 282, a patent is presumed valid and an attack on its validity requires proof of facts by "clear and convincing evidence or its equivalent, by whatever form of words it may be expressed." *American Hoist & Derrick Co. v. Sowa & Sons*, 725 F.2d 1350, 1360 (Fed. Cir.), *cert. denied*, 469 U.S. 821, 105 S.Ct. 95, 83 L.Ed.2d 41 (1984). The "clear and convincing" standard of proof of facts is an intermediate standard which lies somewhere between "beyond a reasonable doubt" and a "preponderance of the evidence." *Addington v. Texas*, 441 U.S. 418, 425, 99 S.Ct. 1804, 60 L.Ed.2d 323 (1979). Although not susceptible to precise definition, "clear and convincing evidence" has been described as evidence which produces in the mind of the trier of fact "an abiding conviction that [the] truth of the factual contentions are 'highly probable.'" *Colorado v. New Mexico*, 467 U.S. 310, 316, 104 S.Ct. 2433, 81 L.Ed.2d 247 (1984).

*On–Sale Bar*

Under § 102(b), "[a] person shall be entitled to a patent unless ... the invention was ... on sale in this country, more than one year prior to the date of the application for the patent in the United States." 35 U.S.C. § 102(b) (2000). A § 102(b) determination is a conclusion of law based on underlying findings of fact. *Linear Tech. Corp. v. Micrel, Inc.*, 275 F.3d 1040, 1047 (Fed.Cir.2001). A two pronged test governs the application of the on-sale bar: "First, the product must be the subject of a commercial offer for sale ... Second, the invention must be ready for patenting." *Pfaff v. Wells Elecs., Inc.*, 525 U.S. 55, 67, 119 S.Ct. 304, 142 L.Ed.2d 261 (1998). Sonosite's motion for summary judgment focuses on the first prong of this test.

Although the standard for determining what constitutes an offer to sell sufficient to raise the on sale bar had been subject to come confusion, the Federal Circuit clarified the standard in *Group One Limited v. Hallmark Cards*, 254 F.3d 1041 (Fed.Cir.2001). In *Group One*, the Federal Circuit held that "[o]nly an offer which rises to the level of a commercial offer for sale, one which the other party could make into a binding contract by simple acceptance (assuming consideration), constitutes an offer for sale under § 102(b)." *Id.* at 1048 (concluding that the need for national uniformity in patent law requires the application of federal common law). To determine if the offer is sufficiently definite, one must examine the language of the proposal in accordance with the principles of general contract law. *Id.* at 1048. Because this issue is governed by federal common law, an important relevant source of general contract law for determining whether a "communication or series of communications rises to the level of a commercial offer for sale" is the Uniform Commercial Code. ("UCC"). *Id.* at 1047; *see also Univ. of Colo. Found., Inc., v. Am. Cyanamid Co.*, 196 F.3d 1366, 1372 (Fed. Cir.1999). Notably, an offer for sale does not have to be accepted to implicate the on-sale bar. *UMC Elecs. Co. v. United States*, 816 F.2d 647, 653 (Fed.Cir.1987) (overruled on other grounds by *Pfaff*, 525 U.S. 55, 119 S.Ct. 304, 142 L.Ed.2d 261 (1998)).

Sonosite asserts that a device embodying each claim of the disputed patent was on sale prior to September 9, 1996, the critical date for determining whether the

on-sale bar applies. Specifically, Sonosite asserts that Diasonics Ultrasound Inc. ("Diasonics") advertised and sold its Impact VFI portable ultrasound imaging device, also known as the Compact System ("Compact System") prior to the critical date. To support this contention, Sonosite relies on the declaration of David Sherman, an employee of Sonosite who was previously employed by Diasonics Ultrasound. Sherman's declaration states that he was "personally involved in the sales process for the Impact VFI portable ultrasound imaging device, also known and marketed as the Compact VFI and the Diasonics Compact System, which was sold by Diasonics and manufactured by Ausonics Pty. Ltd." *Declaration of David Sherman, attached to Sonosite's Motion for Summary Judgment,* para. 12. Sherman goes on to state that "Diasonics first placed this device on sale in the United States prior to April 1996." Mr. Sherman also states that he has reviewed the advertising literature (the Diasonics brochure)and asserts that it was "printed in April 1996 and that it was widely distributed to potential customers of the device." *Id.* at para. 13.

■ The Federal Circuit, however, has made it clear that "uncorroborated oral testimony, particularly that of interested persons recalling long past events, does not, of itself, provide the clear and convincing evidence required to invalidate a patent…" *Woodland Trust v. Flowertree Nursery,* 148 F.3d 1368, 1369 (Fed.Cir. 1998).

■ As supporting documentation, Sonosite has provided a copy of a brochure created by Diasonics, which describes the Compact System. The only date information on the brochure is a notation on the last page which reads "Diasonics Ultrasound Pt. No. 925–00001–00 Rev C 4/96." This is the only possible corroboration on the document that suggests that the device was on sale on or before April of 1996. This evidence is not enough, however, to trigger the on sale bar. *See Lacks Indus., Inc. v. McKechnie Vehicle Components USA, Inc.,* 322 F.3d 1335 (requiring a formal offer under principles of contract law before the on-sale bar is implicated). At best, this date corroborates Mr. Sherman's testimony that the brochure was printed in April of 1996.

Thus, the Court finds that Sonosite does not provide sufficient evidence to corroborate Sherman's testimony. Rather, Sonosite asks the Court to draw inferences from a date on a brochure and the testimony of an individual who does not provide a date certain for Diasonics's sale of the Compact System, but rather testifies that it was on sale "before April 1996." The Court finds that this information, without something more definite to show that the device was actually on sale, fails to meet the clear and convincing evidence standard necessary to trigger the on-sale bar. *See Intel Corp. v. U.S. Int'l Trade Comm'n,* 946 F.2d 821 (Fed.Cir.1991) (holding that the Court would have to "engage in extensive inference drawing to conclude" that the product in question had actually been sold prior to the critical date merely because protypes had been given to salesmen with instructions to sell them).

*Anticipation.*

■ Sonosite further argues that the Diasonics device anticipates every claim of the '021 patent. Although the question of whether a device was on-sale before the critical date is a question of law determined by underlying factual issues, anticipation is a question of fact. *Compare Paragon Podiatry Lab., Inc. v. KLM Labs., Inc.,* 984 F.2d 1182, 1186 (Fed.Cir. 1993) (holding that the on sale bar was a question of law amenable to summary judgment where there were no underlying material facts in issue) *with Advanced Display Sys. Inc. v. Kent State Univ.,* 212

F.3d 1272, 1281 (Fed.Cir.2000) (holding that anticipation is a question of fact (internal citation omitted)). To make such a finding on summary judgment, the Court must determine that no facts material to the question are disputed; or that even if all material factual inferences are drawn in favor of the non-movant, there is no reasonable basis on which the non-movant can prevail. *Cooper v. Ford Motor Co.*, 748 F.2d 677, 679 (Fed.Cir.1984).

Section 102(b) provides that "a person shall be entitled to a patent unless the invention was patented or described in a printed publication ... more than one year prior to the date of publication." 35 U.S.C. § 102(b) (2000). Accordingly, invalidity by anticipation requires that the four corners of a single, prior art document describe every element of the claimed invention, either expressly or inherently, such that a person of ordinary skill in the art could produce the invention without undue experimentation. *See Atlas Powder Co. v. Ireco Inc.*, 190 F.3d 1342, 1347 (Fed.Cir.1999). Material not explicitly contained in the single, prior art document may still be considered for purposes of anticipation if that material is incorporated by reference into the document. *See Ultradent Prods., Inc. v. Life–Like Cosmetics, Inc.*, 127 F.3d 1065, 1069 (Fed.Cir. 1997) (holding that material incorporated by reference into a document may be considered in an anticipation determination). Additionally, extrinsic information may be considered to explain the disclosure of a reference. The role of extrinsic evidence is to educate the decision-maker to what the reference meant to persons of ordinary skill in the field of the invention, not to fill gaps in the reference. *See Studiengesellschaft Kohle, m.b.H. v. Dart Indus., Inc.*,

726 F.2d 724, 727 (Fed.Cir.1984) (although additional references may serve to reveal what a reference would have meant to a person of ordinary skill, it is error to build "anticipation" on a combination of these references). If it is necessary to reach beyond the boundaries of a single reference to provide missing disclosure of the claimed invention, the proper ground is not § 102 anticipation, but § 103 obviousness. *Scripps Clinic and Research Found. v. Genentech, Inc.*, 927 F.2d 1565, 1577 (Fed. Cir.1991).

Evaluating an anticipation claim requires a two step analysis. The first step of an anticipation analysis is claim construction. *See Key Pharms. v. Hercon Labs. Corp.*, 161 F.3d 709, 714 (Fed.Cir.1998). The Court, after hearing evidence and testimony at a *Markman* hearing, issued its claim construction on August 20, 2003. In its order, the Court construed the '021 patent as follows:

1. "A transducer mounting assembly moveably connected to said body such that the distance between said assembly and said body can be adjusted by a user using only one hand"-An assembly sized to contain at least one ultrasound emitter or transducer, which is connected to the portable body such that a user of the apparatus can cause a change in the distance between the transducer mounting assembly and the portable body, using only one hand.

2. "A portable body sized to be hand held"-A body that is sized such that it can be held by hand and, so held, moved from one location to another.

3. "Ultrasound emitter"-At least one component, also known as a "transducer" or "emitter," and capable of emitting ultrasound energy.[2]

---

**2.** The Court held that the following terms did not need to be interpreted because they were unambiguous: 1) "mounted in," "mounted on," "housed within," and "top surface;" 2)

"portable body comprising a top surface;" 3) "connected to" and "coupled to;" 4) "generating an instruction;" and 5) "display."

The second step of the analysis involves a comparison of the construed claim to the prior art. *See Key Pharms.*, 161 F.3d at 714. To be anticipating, a prior art reference must disclose "each and every limitation of the claimed invention[,]...must be enabling[,] and [must] describe...[the-]claimed invention sufficiently to have placed it in possession of a person of ordinary skill in the field of the invention." *Helifix Ltd. v. Blok–Lok, Ltd.*, 208 F.3d 1339, 1346 (Fed.Cir.2000)(quoting *In re Paulsen*, 30 F.3d 1475, 1478–79 (Fed.Cir. 1994)). If there is a genuine issue of material fact relevant to any one of these factors, summary judgment is not proper. *Id.*

Sonosite's motion for summary judgment argues that the Diasonics device discloses each of the limitations of claims 8, 11, 12, 13, 20, 21, and 23–27 of the '021 patent as construed by the Court. To support this contention, Sonosite attached as exhibits the Diasonics brochure, the declaration of David Sherman, the declaration of Robert Isackson, and a transcript of the testimony of Jens Quistgaard from the *Markman* hearing. Sonosite also attached a "detailed claims chart" outlining the ways in which the Diasonics device anticipates each claim of the patented device. *See Sonosite's Motion for Summary Judgment, Exhibit 1.*

Neutrino objects to these supporting documents as being hearsay, uncorroborated, lacking in foundation, speculation, and wholly based on interested testimony. With regard to the declarations of Isackson, Sherman and Quistgaard and the testimony of Quistgaard from the *Markman* hearing, Neutrino also objects that they are providing expert opinions without having been designated as experts. First, with respect to the Diasonics brochure, Neutrino questions its authenticity as well as arguing that it contains hearsay and that it is uncorroborated. The Court ruled on this same issue in an order dated Sep-

tember 24, 2002. In that order, the Court held that the brochure was not hearsay because it is a legally operative document. *See Court's Order on Plaintiff Neutrino's Motion to Strike Inadmissible Exhibits* (Dkt.# 122) (citing *Stuart v. UNUM Life Ins. Co. of Am.*, 217 F.3d 1145, 1154 (9th Cir.2000)). The Court also held that the document "need only be authenticated to be admissible." *Id.* citing *Kepner–Tregoe, Inc. v. Leadership Software, Inc.*, 12 F.3d 527, 540 (5th Cir.1994). In the Court's opinion, the declaration of David Sherman authenticates the brochure when he states that he has reviewed the advertising literature (the Diasonics brochure) and can "confirm that it accurately depicts the Diasonics Impact VFI device," and "that it was printed in April 1996..." *See Declaration of David Sherman, attached to Sonosite's Post–Markman Motion for Summary Judgment based on Invalidity,* para. 12. Second, with regard to the "claims chart," Neutrino objects that the chart is uncorroborated and wholly based on interested testimony. The Court notes, however, that Neutrino provides a chart of its own to detail how and why the claims are not anticipated by the Diasonics device. Although Neutrino's chart is different from Sonosite's in that Neutrino's chart contains references to both interested and purportedly uninterested testimony, this is a credibility determination to be made by the finder of fact, not the Court. Finally, with respect to the declarations of Isackson, Sherman and Quistgaard, and the Quistgaard testimony, Neutrino objects that these statements offer expert opinions although the individuals giving them have not been designated as experts. The Court finds these to be substantially similar to the declarations of Douglas Beall and Richard Redano, which are attached to Neutrino's response to the Motion for Summary Judgment and are used by Neutrino to support its contention that the

patent is not invalid. Although the Court notes that neither side has designated experts, the Court also notes that neither side is precluded from submitting the opinions of lay witnesses, so long as those opinions are limited to "those opinions which are (a) rationally based on the perception of the witness; (b) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue, and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702." *Fed.R.Evid.* 701. To the extent that any of the declarations or transcript testimony rises to the level of expert testimony, the Court will disregard those portions of the declarations or transcript testimony. The majority of the declarations' contents, however, are admissible as perceptions of the witnesses or as being helpful to a clear understanding of the witnesses' testimony and the determination of a fact in issue. Therefore, the Court will allow the declarations to be used as summary judgment evidence.

 Having reviewed all of the documentation discussed above, the Court believes that a fact issue exists on the issue of anticipation. The Court cannot reconcile the testimony of Dr. Quistgaard with that of Dr. Beall. Dr. Quistgaard's testimony, coupled with that of Mr. Sherman, is that the Diasonics device anticipates each claim of the '021 patent. Dr. Beall, on the other hand, asserts that the Diasoncs device does not anticipate any of the claims of the '021 patent. For example, with regard to the claim that the device contain "a body that is sized such that it can be held by hand, and so held, moved from one location to another," Dr. Quistgaard testified that the Diasonics device was capable of being picked up by someone such as himself and moved from one location to another. *See Testimony of Jens Quist-gaard, attached as Exhibit R to the Declaration of Robert Isackson,* page 14, lines 8–10. Thus, Dr. Quistgaard believes that the claims relating to the device being hand-held are anticipated by the Diasonics device. Dr. Beall's declaration states, however, that from his review of the Diasonics literature and his observations of the device, the Diasonics device would be too large and too heavy for someone such as himself to hold the body of the device by hand and move it from one location to another. *See Declaration of Douglas Beall attached to Plaintiff's Response to the Motion for Summary Judgment,* page 4, paragraph 9 & 10. Thus, Dr. Beall believes that the Diasonics device does not anticipate the hand-held portions of the '021 patent. The portability of the device is an issue that occurs in independent claim numbers 8, 20, and 25. The parties' witnesses have equally competing views on issues relating to the transducers, the ability of an operator of the Diasonics device to change the distance between the transducer mounting assembly and the portable body using only one hand, and whether the Diasonics device actually contains "at least two ultrasound emitters" as required by the '021 patent. Thus, the Court is faced with conflicting testimony regarding virtually every aspect of the '021 patent. Whether the Diasonics device anticipates each of the claims in the patent, based on the observations of the parties' competing witnesses, is a question for the trier of fact, rather than the Court, to decide. Therefore, the Court finds that summary judgment is inappropriate.

### Conclusion

The Court finds that there are fact issues surrounding the on-sale bar and the issue of anticipation. Therefore, Defendant's Post–Markman Motion for Sum-

mary Judgment based on Invalidity (Dkt. # 131) is DENIED.

It is so ORDERED.