NOT FOR PUBLICATION

**FILED**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

APR 4 2024

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. 22-10355 |
| Plaintiff-Appellee, | D.C. No. 3:21-cr-00402-RS-2 |
| v. | |
| VICTOR MAKRAS, | MEMORANDUM* |
| Defendant-Appellant. | |

Appeal from the United States District Court
for the Northern District of California
Richard Seeborg, Chief District Judge, Presiding

Argued and Submitted February 8, 2024
San Francisco, California

Before: R. NELSON, FORREST, and SANCHEZ, Circuit Judges.

A jury convicted Defendant-Appellant Victor Makras of two crimes: (a) making, and aiding and abetting the making of, false statements to a bank in violation of 18 U.S.C. §§ 1014 and 2; and (b) bank fraud and aiding and abetting bank fraud in violation of 18 U.S.C. §§ 1344 and 2. On appeal, Makras challenges the

---

* This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

sufficiency of the Government's evidence. We have jurisdiction under 28 U.S.C. § 1291, and we affirm.

We review de novo the sufficiency of the evidence supporting a criminal conviction. *United States v. Chang Ru Meng Backman*, 817 F.3d 662, 665 (9th Cir. 2016). Sufficient evidence supports a conviction if, "after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id.* at 667–68 (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)).

**1.** ***Making False Statements to a Bank.*** Makras first contends that there was insufficient evidence to convict him of making a false statement to a bank and aiding and abetting the same. Specifically, he argues the Government failed to prove "that he made a false statement" that he knew was false because, under California law, it was true that the Kellys owed him $200,000.

In California, a promissory note represents "an unconditional promise to pay money signed by the person undertaking to pay." *Saks v. Charity Mission Baptist Church*, 110 Cal. Rptr. 2d 45, 58 (Cal. Ct. App. 2001). A note is invalid, however, if it lacks consideration or if it was intended as a sham to fool a third party. *Id.* at 58–59. Although extending the time for repayment can constitute consideration for a note, the extension of time must be based on an actual agreement by the parties. *See Levine v. Tobin*, 26 Cal. Rptr. 273, 274–75 (Cal. Dist. Ct. App. 1962).

2

Here, a rational jury could conclude that the amended note lacked consideration because there was no agreement for an extension of time to repay. The evidence at trial showed that Makras never demanded repayment from the Kellys after they missed their June 2014 deadline nor did the Kellys seek an extension for repayment. *Cf. id.* at 275 (extension contract drafted after plaintiffs demanded performance from defendants and defendants requested an extension of time to perform). The Government also presented evidence that the note was a sham because Makras never loaned or intended to loan the Kellys more than $70,000,[1] and amended the note only after Harlan Kelly (Harlan) told Makras that he wanted to increase his cash-out amount. Accordingly, a rational juror could have concluded that the promissory note for $915,000—$130,000 more than Makras or the investors ever lent to the Kellys—was invalid for want of consideration or because it was intended to fool the lender, Quicken Loans, Inc. (Quicken). Moreover, even assuming the Kellys owed $915,000, a rational juror could have found that Makras's statement that the entire principal was subject to 8% interest was false.

A rational juror could have further concluded that Makras knew his statements concerning the loan amount were false. In addition to the evidence regarding the loan amount, the Government presented testimony that Makras had approximately

---

[1]The Government introduced evidence that Makras wrote several checks for approximately $130,000 to pay off various bills for the Kellys, but those payments occurred after the lender disbursed—and Makras received—the loan proceeds.

40 years of experience as a real estate professional, working on at least eight to ten real-estate transactions per year.

Alternatively, the jury could have determined that Makras aided and abetted Harlan's false statements to the lender. *See United States v. Singh*, 532 F.3d 1053, 1057 (9th Cir. 2008) (listing elements of aiding and abetting). Like his principal-offender argument, Makras contends that Harlan did not make a false statement to a bank because Harlan's statements to Quicken about the loan amount were true. But the Government presented sufficient evidence that Harlan also knowingly made a false statement to a bank because Harlan's statements that he owed Makras $200,000 were false for the same reasons that Makras's statements about the loan amount were false. Additionally, the Government introduced evidence that the Kellys had been unable to repay the investors, that they owed Makras $70,000, and that their first attempt to secure a refinance loan through their credit union was unsuccessful. The Government also offered testimony from a Quicken underwriter that for large cash-out loan applications, such as $130,000, Quicken requires the borrower to explain how the cash will be used. From this evidence, a rational juror could have found that Harlan knowingly lied to Quicken about owing Makras $200,000 to prevent any difficulty or delay in receiving the desired refinance loan.[2]

---

[2]Makras argues that the Government's theory about why Harlan lied about the debt on his loan application—to conceal unpaid construction costs—is illogical because Harlan had no reason to lie. The Government, however, was not required to

The Government likewise proved that Makras had the requisite intent for aiding and abetting where evidence at trial showed that Makras was heavily involved in the Kellys' efforts to secure a refinance loan, Harlan told Makras why he wanted the note amount increased, and Makras prepared a revised note and stated that the Kellys owed him $200,000 on multiple documents associated with the Kellys' loan application. A rational juror could have concluded that Makras knew that these documents would be presented to Quicken, particularly given his extensive real-estate experience. *See United States v. Bellucci*, 995 F.2d 157, 159 (9th Cir. 1993) (per curiam) (explaining that a rational juror could conclude that the defendant knew his loan application would be presented to a bank based on his "familiarity with mortgage and construction lending"). Further, a rational juror could have found that Makras intended to help Harlan make a false statement to a bank.

2.    ***Bank Fraud.*** Makras argues that the Government failed to prove that he committed bank fraud for the same reasons it failed to prove that he made a false statement to a bank. 18 U.S.C. § 1344 provides two alternative methods for establishing bank fraud. Section 1344(1) "criminalizes schemes to defraud financial institutions," while § 1344(2) "criminalizes schemes to obtain money or property in the custody or control of a bank by deceptive means." *United States v. McNeil*, 320

---

prove that Harlan's reasons for lying made sense but only that he lied to the lender. *See United States v. Grasso*, 724 F.3d 1077, 1087 (9th Cir. 2013) (reciting elements for making a false statement to a bank).

F.3d 1034, 1037 (9th Cir. 2003). Because the Government presented sufficient evidence to convict Makras under § 1344(2), we do not address § 1344(1).

For the reasons explained above, a rational juror could have found that the Kellys did not owe Makras $200,000 either because there was no consideration for the promissory note or because the note was a sham to fool Quicken. Alternatively, the jury could have convicted Makras under an aiding and abetting theory. As previously explained, a rational juror could have found that Harlan knowingly lied about owing Makras $200,000 to defraud and obtain additional money from Quicken and that Makras intended to facilitate Harlan's bank fraud.

**AFFIRMED.**